UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KEGUN CHEN, individually and on behalf of all
other employees similarly situated,

                              Plaintiff,

          -against-

OCEANICA CHINESE RESTAURANT, INC.
d/b/a OCEANICA SEAFOOD RESTAURANT,
ZHIGANG WANG, XI LIU, TIANMING
ZHENG a.k.a. TIN CHENG, A YE, QINZHOU
CHEN, JINPING ZHU, JOHN DOES #1-10,

                         Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-4623 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Kegun Chen ("Named Plaintiff") brings this action on behalf of himself and 17

opt-in Plaintiffs (collectively "Plaintiffs"), pursuant to the Fair Labor Standards Act, 29 U.S.C.

§ 201 et seq. (the "FLSA"), against Defendants Oceanica Chinese Restaurant, Inc. ("Oceanica")

and several of Oceanica's purported owners, officers, shareholders, and managers (collectively

"Defendants"), seeking the recovery of unpaid wages and overtime compensation. (Am. Compl.

(Dkt. 60) ¶ 1.) Plaintiff also brings a purported class action against Defendants on behalf of

himself and all other similarly situated current and former employees of Oceanica, pursuant to

Federal Rule of Civil Procedure 23 and Article 19 of the New York Labor Law (the "NYLL"),

seeking unpaid wages, overtime compensation, spread-of-hours compensation, and

reimbursement of expenses and wage deductions. (Id. ¶ 2.)

      Before the court are the following motions: (1) Defendant Xi Liu ("Liu")'s motion for

summary judgment on Plaintiffs' FLSA and NYLL claims (Mot. for Summ. J. ("Liu Mot.")

(Dkt. 108)); (2) Defendants Qinzhou Chen ("Chen") and Jinping Zhu ("Zhu")'s joint motion for

1

summary judgment on Plaintiff's FLSA and NYLL claims (Mot. for Summ. J. ("Chen & Zhu Mot.") (Dkt. 94)); and (3) Chen and Zhu's joint motion for summary judgment on cross-claims brought against them and their co-Defendants Tianming Zheng ("Zheng") and A Ye ("Ye") by Liu and Oceanica (id.).

For the reasons set forth below, the court grants summary judgment in favor of Liu, Chen, and Zhu on Plaintiffs' FLSA claims. Likewise, the court grants summary judgment in favor of Chen and Zhu on Plaintiffs' NYLL claims. However, because an issue of material fact remains as to whether Liu acted as an employer under the NYLL, the court denies Liu's motion for summary judgment on Plaintiffs' NYLL claims. Finally, the court grants summary judgment in favor of Chen and Zhu on Oceanica and Liu's cross-claims.

I.      **BACKGROUND**

   A.      **Facts**

Named Plaintiff worked briefly as a chef at Oceanica Seafood Restaurant, from May through June of 2013. (Decl. of Kegun Chen ("Named Pl. Decl.") (Dkt. 36) ¶ 1.) Plaintiffs have testified that they and other full-time employees regularly worked 10-12 hour shifts six to seven days a week, but that they were not paid minimum wage, were not paid for hours worked, were not provided overtime or spread-of-hours compensation, were not provided with written notice of the basis for their wages, and were denied regular, uninterrupted, 30-minute lunch breaks. (See, e.g., id. ¶¶ 2-9.) In the Amended Complaint, Plaintiffs allege that: Defendant Zhigang Wang ("Wang") is the Chief Executive Officer, owner, and shareholder of Oceanica (Am. Compl. ¶ 10); Liu is an owner and manager (id. ¶ 11); Ye is a manager (id. ¶ 13); and Zheng, Chen, and Zhu are each owners, managers, and shareholders (id. ¶¶ 12, 14, 15).

2

Although it is not unusual for defendants in an FLSA action to contest the extent of their supervisory authority over the plaintiffs, the moving Defendants in this case uniformly deny that they had anything to do with the restaurant at all. In addition, the record before the court is notably sparse. The parties' sworn statements generally disclaim any knowledge of facts critical to Plaintiffs' claims, and the only documentary evidence is of questionable relevance: Plaintiffs have submitted copies of sublease agreements for the Oceanica property, signed by Zheng, Wang, Chen, and Zhu as subtenants (Sublease (Chen & Zhu Rule 56.1 Statement ("Chen & Zhu 56.1") (Dkt. 98), Exs. A, B (Dkts. 98-1, 98-2))); a copy of a shareholder agreement listing Wang as President, Chen as Vice President, and Zhu as Secretary of Oceanica (Shareholder Agreement (Chen & Zhu Rule 56.1, Ex. E (Dkt. 98-5)); copies of three bounced checks issued to one opt-in Plaintiff by Oceanica and bearing an unidentified signature (Pls.' Resp. to Defs.' Request for Production of Docs. ("Pls.' Disc. Resp.") (Chen & Zhu Mot. for Disc. (Dkt. 83), Ex. D (83-4)) at 8-9); three pages of untranslated, handwritten Chinese script (id. at 10-12); and copies of receipts for purchases at McDonald's, Home Depot, Hong Kong Supermarket, and several unidentifiable businesses (id. at 13-16).

Plaintiffs have not produced any other documentation indicating that they worked at Oceanica at all, what their job descriptions or titles were, what their wages were, to whom they reported, or who actually managed the restaurant. Furthermore, while four Plaintiffs' sworn declarations do specify their job titles and earned wages, none mention who their direct supervisors or managers were. (See Named Pl. Decl.; Decl. of Junbao Lv ("Lv Decl.") (Dkt. 37); Decl. of Sau Chun Cheng ("Cheng Decl.") (Dkt. 38); Decl. of Yiming Xie ("Xie Decl.") (Dkt. 39).) When Chen and Zhu requested further documentation during discovery, Plaintiffs

objected on the grounds that such requests were "unduly burdensome" and that Plaintiffs did not have further evidence in their possession. (Pls.' Disc. Resp.)

Chen and Zhu have testified that their involvement in Oceanica was limited to early investment, and that they were later shut out of the restaurant's management by Zheng, Wang and Liu. (See generally Chen Aff. (Dkt. 96); Zhu Aff. (Dkt. 97).) Specifically, Chen and Zhu testified that in May of 2012, they executed a sublease, along with Zheng and Wang, for the premises that would become Oceanica, with Chen and Zhu's company, Sina Inc., paying half of the $500,000 security deposit. (Chen Aff. ¶¶ 3-8; Zhu Aff. ¶¶ 3-8.) Once the restaurant was opened, Chen and Zhu claim that Zheng, Wang, and Liu decided to operate it themselves, refusing to issue stock to Sina Inc. despite the shareholder agreement. (Chen Aff. ¶ 13; Zhu Aff. ¶ 13.) Chen and Zhu testified that Zheng, Wang, and Liu refused to let Chen and Zhu attend management meetings and refused to assign them any titles, positions, or job duties at the restaurant. (Chen Aff. ¶¶ 14, 18; Zhu Aff. ¶¶ 14, 18.) Although Chen is identified in the shareholder agreement as the inventory manager, he claims that he "had not even laid eyes on a single strand of vegetable." (Chen Dep. (Pls.' Rule 56.1 Statement in Opp'n to Chen & Zhu Mot. ("Pls.' Opp'n to Chen & Zhu Mot.") (Dkt. 102), Ex. B (Dkt. 102-2)) at 17:21-22.) Plaintiffs dispute Chen and Zhu's claims that they were not involved in the management of the restaurant, but Plaintiffs' only basis for this dispute appears to be the fact that Chen and Zhu are listed as Vice President and Secretary in the shareholder agreement. (Pls.' Opp'n to Chen & Zhu Mot. ¶¶ 11-28.)

Chen and Zhu apparently continued to frequent Oceanica as customers, despite their alleged exclusion from management. Chen testified that he saw Liu working there on several occasions, and he claims that other employees called her "the boss lady." (Id. at 34:24-25.) Zhu

4

also claims to have seen Liu collecting money at the restaurant when he went there to eat. (Zhu Dep. (Pls.' Opp'n to Chen & Zhu Mot., Ex. C (Dkt. 102-3)) at 19:5-7.) Chen and Zhu appeared unclear as to the exact role that Liu had in the restaurant, however, with Chen describing her at various points as "in charge," (Chen Dep. at 16:10), the president (id. at 18:6), and one of several cashiers (id. at 18:17).

For her part, Liu has testified that she is not and never was an owner, shareholder, manager, or supervisor at Oceanica. (See Liu Rule 56.1 Statement ("Liu 56.1") (Dkt. 110).) She claims that she never worked there and had no connection with the restaurant apart from her previous marriage to Wang. (See id.; Answer to Am. Compl. ¶ 86.) Plaintiffs dispute Liu's testimony, arguing that regardless of whether she had an ownership interest in the restaurant, she "had complete operational control over Oceanica at all times." (Pls.' Counterstatement to Liu 56.1 (Dkt. 114) ¶¶ 1-2, 4.) Plaintiffs point to Chen's deposition testimony that Liu was referred to as the "boss lady," and they contend that this shows Liu "had managerial and supervisory powers." (Id. ¶¶ 3, 5-10.)

In Liu and Oceanica's cross-claims against Chen, Zhu, Zheng, and Ye (collectively "Cross-Claim Defendants"), they claim that, in fact, Cross-Claim Defendants were the ones who took over control of the restaurant, and that they excluded Liu's then-husband, Wang, from all aspects of the business. (Answer to Am. Compl. ¶¶ 153-55.) Liu and Oceanica claim that Wang invested over $2 million in renovations and capital improvements in Oceanica, and that Cross-Claim Defendants withdrew funds from the business's shared account before destroying their records and cutting off all communication with Wang. (Id. ¶¶ 152, 159-63.)

5

**B.** **Procedural History**

Named Plaintiff filed his initial Complaint against Oceanica, Wang, Liu (who, at that
time, was married to Wang), Ye, and Zheng on August 16, 2013. (Compl. (Dkt. 1).) Since the
filing of the Complaint, 17 additional Plaintiffs have opted into the action pursuant to the consent
procedure of § 216(b) of the FLSA. (See Dkts. 4-9, 17-23, 29-31, 78.) On April 2, 2014,
District Judge Frederic Block adopted in full a Report and Recommendation ("R&R") issued by
Magistrate Judge Viktor Pohorelsky, granting conditional certification of a collective action
under the FLSA and denying class certification as to the NYLL claims. (Order Adopting R&R
(Dkt. 52); see also R&R (Dkt. 48).) On April 29, 2014, the case was reassigned to the
undersigned. (Apr. 29, 2014, Order.) That same day, Plaintiffs filed an Amended Complaint, in
which they added Chen and Zhu as Defendants. (See Am. Compl.) Named Plaintiff has not yet
renewed his motion for class certification as to the NYLL claims.

In their Answer to the Amended Complaint, Liu and Oceanica filed cross-claims against
Cross-Claim Defendants Chen, Zhu, Zheng, and Ye, alleging common law claims of conspiracy,
fraud, unjust enrichment, breach of fiduciary duty, and conversion. (Answer to Am. Compl.
(Dkt. 71).) Specifically, Liu and Oceanica allege that Cross-Claim Defendants defrauded Wang,
divesting him of $2 million in investments and control of his portion of the Oceanica business.
(Id. ¶ 130.) In addition, Liu claims that she was "unjustly brought into a lawsuit caused by the
Cross-Claim Defendants' unjust enrichment." (Id. ¶ 193.)

Chen and Zhu have now moved for summary judgment on Plaintiffs' FLSA and NYLL
claims, arguing that they do not qualify as employers under either law. (Chen & Zhu Mot.

6

at 12-18.) As Cross-Claim Defendants, Chen and Zhu have also moved for summary judgment on Liu and Oceanica's cross-claims, arguing that they have failed to produce evidence sufficient to make out a prima facie claim. (Id. at 18-19.)

Liu has also moved for summary judgment on Plaintiffs' FLSA and NYLL claims, arguing that she had no connection to the restaurant other than through her ex-husband, Wang, and that she is not an employer as defined under either law. (Liu Mot. at 4.) Liu further argues that Plaintiffs' FLSA claims fail as a matter of law because Plaintiffs have not shown that they are covered by the FLSA. (Id. at 5.)

### C.    Potential Defaults

This already complex case has been further complicated by the fact that several Defendants face potential default judgments. Ye and Zheng did not appear or answer the initial Complaint, and the Clerk of Court entered a certificate of default against them on October 21, 2013. (Clerk's Entry of Default (Dkt. 28).) Likewise, Ye and Zheng have failed to respond to the Amended Complaint, although Plaintiffs have not pursued a default judgment against them as of yet.

Meanwhile, the shifting representational status of Attorney Vincent S. Wong has exposed Oceanica and Wang to potential default as well. While Wong formerly represented Oceanica, Wang, and Liu, he withdrew as counsel for Wang on April 29, 2014, on the basis that Wang could no longer afford representation. (Min. Order (Dkt. 59).) Wang, now proceeding pro se, has failed to answer Plaintiffs' Amended Complaint, although Plaintiffs have not yet requested a certificate of default against him. Wong then represented both Oceanica and Liu for a period of time, and on May 19, 2014, he filed an Answer to the Amended Complaint, along with cross-claims, on their behalf. (See Answer to Am. Compl.)

7

Almost eight months later, however, Wong moved to withdraw as counsel for Oceanica as well, explaining that his firm "found itself in a position where it now represented Oceanica . . . but no longer had a relationship with a representative from [Oceanica] to provide feedback on the progress of the case or to pay . . . legal bills." (Decl. of Vincent S. Wong (Mot. to Withdraw (Dkt. 82), Ex. 1 (Dkt. 82-1)) ¶ 9.) Wong conceded that "[i]t seems clear, now, in hindsight, that [Wang's] request for this office to no longer represent him also was on behalf of [Oceanica.]" (Id. ¶ 19.) On February 11, 2015, Judge Pohorelsky granted Wong's motion to withdraw as counsel for Oceanica. (Min. Order (Dkt. 90).) By separate Order issued that day, Judge Pohorelsky advised Oceanica that as a corporation it must be represented by counsel in order to appear in federal court, and that if Oceanica failed to obtain counsel, other parties would be authorized to pursue a default judgment against it. (Feb. 11, 2015, Order (Dkt. 91) (citing, inter alia, Lattanzio v. COMTA, 481 F.3d 137, 139-40 (2d Cir. 2007)).) To date, no attorney has appeared as replacement counsel for Oceanica, and the corporation did not participate in the briefing on the motions for summary judgment.

## II.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most

favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).

Finally, the court notes that the fact that Plaintiffs have not yet renewed their motion for Rule 23 class certification as to their NYLL claims does not bar the court from considering Defendants' motions for summary judgment on those claims. See Schweizer v. Trans Union Corp., 136 F.3d 233, 239 (2d Cir. 1998) ("There is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification."); Larsen v. JBC Legal Group, P.C., 235 F.R.D. 191, 193-94 (E.D.N.Y. 2006) ("The district court may consider a motion for summary judgment before a motion for class certification.").

**B.    The FLSA**

Congress enacted the FLSA in an effort to "protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance

of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" Barrentine v. Ark.–Best Freight Sys. Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). The wage and overtime provisions of the FLSA set minimum wage requirements and generally prohibit employment above a certain number of hours per week without additional compensation. 29 U.S.C. §§ 201-13.

To recover on their FLSA claims, Plaintiffs must prove that they were "employees" and that Defendants were "employers" as defined by the statute. Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015). Plaintiffs also must demonstrate "engagement in interstate commerce, either by an employee or by the employer as a whole, [as] a prerequisite for liability" under the FLSA. Id. at 353.

The FLSA defines "employee" as "any individual employed by an employer," and it defines "to employ" as including "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1); id. § 203(g). To qualify as an "employer" under the Act, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013). In determining whether a defendant may be held liable as an employer, the court examines "whether the individual exercised authority over management, supervision, and oversight of the company's affairs in general, as well as evidence under the Carter framework that reflect the individual's exercise of direct control over the plaintiff employees." Ethelberth, 91 F. Supp. 3d at 352 (citing Carter v. Duchess Cmty Coll., 735 F.2d 8 (2d Cir. 1984)). The Carter framework looks to whether the defendant: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry, 722 F.3d at 105. These factors are

10

non-exclusive, and the court determines employer status based on the totality of the circumstances. Id. at 116.

In order to show engagement in commerce, an employee plaintiff must demonstrate either "individual coverage" through his own engagement in commerce or in the production of goods for commerce, or "enterprise coverage" through his employer's engagement in commerce or in the production of goods for commerce. Ethelberth, 91 F. Supp. 3d at 353; 29 U.S.C. §§ 206(a), 207(a)(1). The employee bears the burden of establishing FLSA coverage. Ethelberth, 91 F. Supp. 3d at 354; see also Li v. Zhao, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014) ("[T]he failure of the plaintiff to demonstrate an issue for trial involving employee coverage, based on either the enterprise or individual theory, is a proper basis for dismissing his FLSA claim on summary judgment.").

Individual coverage under the FLSA applies to any individual employee "engaged in commerce or in the production of goods for commerce," regardless of whether his employer qualifies for enterprise coverage. 29 U.S.C. § 203(r)(1); Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp. 2d 276, 292 (E.D.N.Y. 2007). Individual employees are engaged in commerce "when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence)" between states. 29 C.F.R. § 779.103. "The dispositive test for FLSA [individual] coverage asks whether a plaintiff was an employee 'in the channels of interstate commerce, as distinguished from one who merely affected that commerce.'" Xelo v. Mavros, No. 03-CV-3665 (NG) (MDG), 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (quoting McLeod v. Threlkeld, 319 U.S. 491, 494 (1943)). For example, "handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after

11

acquisition by a merchant for general local disposition are not." McLeod, 319 U.S. at 494.  In

determining whether plaintiffs have established individual coverage, "the court must 'focus on

the activities of the employees and not on the business of the employer.'" Xelo, 2005

WL 2385724, at *4 (quoting Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211

(1959)); see also Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007)

("To determine whether an individual employee is engaged in commerce, courts conduct a fact-

specific inquiry into the employment actions of each and every employee asserting a claim under

the Act.").

      Alternatively, an FLSA plaintiff may establish enterprise coverage, by demonstrating that

his employer:

> (i) has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling, or
> otherwise working on goods or materials that have been moved in
> or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or
> business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1)(A) (emphasis added); Ethelberth, 91 F. Supp. 3d at 355; Cheng Mei Lin v.

Yeh's Bakery, Inc., No. 12-CV-2146 (JG), 2013 WL 867436, at *2 (E.D.N.Y. Mar. 7, 2013);

Yang Li v. Ya Yi Cheng, No. 10-CV-4664 (JBW), 2012 WL 1004852, at *3 (E.D.N.Y.

Mar. 23, 2012).

      "Enterprise coverage has been interpreted broadly by the courts." Boekemeier v. Fourth

Universalist Soc'y in City of New York, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000).  "So long as

the employer achieves an annual gross business volume of $500,000 or more, 'all of the

employer's employees are covered under [the FLSA] as long as at least some handle, sell, or

otherwise work on goods or materials that have been moved in or produced for commerce.'"

Ethelberth, 91 F. Supp. 3d at 355 (quoting Jones v. E. Brooklyn Sec. Servs. Corp.,

No. 11-CV-1021 (JG) (SMG), 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012)).  In other

words, while individual coverage requires each individual plaintiff to be "engaged in

commerce," 29 U.S.C. § 203(r)(1), enterprise coverage requires only a tangential connection

between any employees and commerce, assuming the requisite business volume of the employer.

See Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 346 (E.D.N.Y. 2014) ("An

employee's handling of cleaning and janitorial supplies and food products is sufficient to

establish the first prong of enterprise coverage." (citing Gomez v. El Ranchero de Andres Carne

de Tres Inc., No. 12-CV-1264 (CBA) (MDG), 2014 WL 1310296, at *3 (E.D.N.Y.

Mar. 11, 2014), adopted by 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014); Rodriguez v.

Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011))); see also Jones, 2012

WL 3235784, at *4 ("[E]nterprise coverage applies so long as some of the employees wear

uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning

supplies that have moved in interstate commerce.") (citations omitted); Archie v. Grant Cent.

P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998) ("[V]irtually every enterprise in the nation

doing the requisite dollar volume of business is covered by the FLSA[.]").

### C.   The NYLL

The NYLL's wage and overtime protections are analogous to those of the FLSA.

Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010).  "Although

the Labor Law does not require a plaintiff to show either a nexus with interstate commerce or

that the employer has any minimum amount of sales, it otherwise mirrors the FLSA in

compensation provisions regarding minimum hourly wages and overtime[.]" Santillan v.

Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (internal quotation marks omitted) (citing,

inter alia, NYLL § 652; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2).

13

As with the FLSA, Plaintiffs must show that they were "employees" and that defendants were "employers" as defined by the statute and its accompanying regulations. See N.Y. Lab. Law § 650 et seq.; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2). An employee under the NYLL is "any individual employed or permitted to work by an employer in any occupation[.]" N.Y. Lab. Law § 651(5). The NYLL defines "employer" as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as an employer." N.Y. Lab. Law § 651(6)).

In interpreting whether a defendant qualifies as an employer under the NYLL, courts look to the same four factor "economic reality" test used for determining employer status under the FLSA—namely whether the alleged employer "'(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records.'" Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009) (quoting Herman v. RSR Sec. Servs Ltd., 172 F.3d 132, 139 (2d Cir. 1999)); see also Sethi v. Narod, 974 F. Supp. 2d 162, 188-89 (E.D.N.Y. 2013) (listing cases for the proposition that district courts in the Second Circuit have consistently interpreted the NYLL standard for employer status "coextensively" with that of the FLSA).

## III.   DISCUSSION

### A.   Plaintiffs' FLSA Claims

Defendants Liu, Chen, and Zhu all move for summary judgment on Plaintiffs' FLSA claims, but on different grounds. While all three Defendants argue that they do not qualify as employers under the Act (Liu Mot. at 4; Chen and Zhu Mot. at 12-18), Liu further maintains that

14

Plaintiffs have failed to show the required engagement in interstate commerce to warrant FLSA coverage (Liu Mot. at 5).

      1.    <u>Against Liu</u>

Because engagement in commerce is a prerequisite to liability under the FLSA, <u>Ethelberth</u>, 91 F. Supp. 3d at 353, the court first addresses Liu's argument that Plaintiffs have failed to demonstrate such engagement under either the individual or enterprise coverage theory.

      *a) Individual Coverage*

As an initial matter, the Amended Complaint does not contain any allegation of individual Plaintiffs' engagement in interstate commerce. Furthermore, while Plaintiffs have asserted individual coverage in their subsequent briefing, they have failed to produce sufficient evidence to raise a question of material fact on this issue.

Plaintiffs have submitted four sworn declarations stating that three Plaintiffs worked as chefs (Named Pl. Decl. ¶ 1; Lv Decl. ¶ 1; Xue Decl. ¶ 1) and one as a server (Cheng Decl. ¶ 1). This evidence is enough to establish the first prong of <u>enterprise</u> coverage, because such employees reasonably can be assumed to have handled goods or materials that had been moved in commerce. <u>See</u> 29 U.S.C. § 203(s)(1)(A)(i); <u>Ethelberth</u>, 91 F. Supp. 3d at 355; <u>Rocha</u>, 44 F. Supp. 3d at 346. However, <u>individual</u> coverage requires evidence that each employee plaintiff was actually "engaged" in commerce. <u>See</u> 29 U.S.C. § 203(r)(1); <u>Xelo</u>, 2005 WL 2385724, at *4. Mere evidence of job titles is insufficient to show engagement in commerce for these four Plaintiffs, let alone for the additional thirteen Plaintiffs about whom the court knows nothing more than that they were formerly employed by Oceanica. (<u>See</u> Dkts. 4-9, 17-23, 29-31, 78.) <u>See also</u> <u>McLeod</u>, 319 U.S. at 497 ("The test . . . is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to

the movement of commerce as to be a part of it."); Boekemeier, 86 F. Supp. 2d at 287 ("To be engaged in commerce, a substantial part of the employee's work must be related to interstate commerce.") (citations omitted).  Absent additional evidence, the court cannot conduct the required "fact-specific inquiry into the employment actions of each and every employee asserting a claim under the Act." Jacobs, 483 F. Supp. 2d at 257.

Plaintiffs' first and only reference to individual coverage comes in their opposition to Liu's motion for summary judgment.  There, Plaintiffs state that "Plaintiff's title throughout his employment at Oceanica was that of chef.  As a chef, his duties require him to order and prepare food that was shipped from out of state.  Furthermore, the prepared food was served to out-of-state customers.  A chef at a restaurant as large as Oceanica would necessarily require him to engage in substantial interstate commerce." (Mem. of Law in Opp'n to Liu Mot. ("Pls.' Opp'n to Liu Mot.") (Dkt. 113) at 14-15.)  This argument is unavailing.  First, there is no indication which of the 17 Plaintiffs these statements describe, nor could they apply to any Plaintiffs not employed as chefs.  In addition, Plaintiffs' argument is unsupported by the record.  There is no evidence that Oceanica was a large restaurant[1] and, even if it was, individual coverage requires affirmative evidence that engagement in commerce constituted a substantial part of each individual Plaintiff's work responsibilities.  See Owusu v. Corona Tire Shop, Inc., No. 09-CV-3744 (NGG) (JO), 2013 WL 1680861, at *4 (E.D.N.Y. Apr. 17, 2013) ("Evidence that an employee sometimes engaged in an activity that can be considered interstate commerce . . . is not sufficient to show that the employee was in the channels of commerce rather than merely affecting commerce.").  Speculation will not suffice.  See Celotex Corp., 477 U.S. at 324 (party opposing summary judgment must identify specific facts and affirmative evidence that

---

[1] Plaintiffs allege that Oceanica employed over 100 employees at any one time.  (Am Compl. ¶¶ 30, 37; Pls.' Opp'n to Liu Mot. at 14.)  However, these allegations are unsupported by any sworn or documentary evidence.

contradict those offered by the moving party to demonstrate that there is a genuine issue for trial); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998) (non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful").[2]

Accordingly, the court finds that Plaintiffs have failed to raise a disputed issue of material fact as to whether they each engaged in interstate commerce so as to qualify for individual coverage under the FLSA. However, because individual coverage is only one of two ways that Plaintiffs may establish FLSA coverage, the court next considers whether Plaintiffs have demonstrated enterprise coverage on the part of Oceanica.

### b) Enterprise Coverage

As noted above, Plaintiffs' four sworn declarations that they worked as chefs and servers are sufficient to satisfy the first prong of enterprise coverage for all 17 Plaintiffs. See 29 U.S.C. § 203(s)(1)(A)(i); Rocha, 44 F. Supp. 3d at 346 ("An employee's handling of cleaning and janitorial supplies and food products is sufficient to establish the first prong of enterprise coverage.") (citations omitted). However, Plaintiffs have failed to satisfy the second necessary prong—namely, that Oceanica had annual gross sales or business of $500,000 or more. See 29 U.S.C. § 203(s)(1)(A)(ii). While the Amended Complaint does allege that Defendants made

---

[2] Because these assertions are not supported by evidence, the court need not decide the question of whether such hypothetical evidence would be sufficient to defeat summary judgment. However, the court notes that other district courts in the Second Circuit have held that local cooks, waiters, and delivery persons do not necessarily engage in commerce, even where evidence shows that these employees purchased supplies from out of state or served products to customers from out of state. See, e.g., Xelo, 2005 WL 2385724, at *4-5 (holding that a delivery man for a local bagel shop, who delivered nationally distributed products such as Coca-Cola, was not "engaged in commerce" under the FLSA); Lamont v. Frank Soup Bowl, Inc., No. 99-CV-12482 (JSM), 2001 WL 521815, at *3 (S.D.N.Y. May 16, 2001) (holding that plaintiff, who worked as a cook, waiter, and purchaser of supplies for a local restaurant, did not engage in or produce goods for commerce). The court in Lamont further found that the fact that the plaintiff regularly served out-of-state customers was insufficient to demonstrate his engagement in interstate commerce, noting that to hold otherwise would mean that "every hot dog vendor in New York would be engaged in producing goods for interstate commerce." Id. at *2.

more than $500,000 in annual revenues (Am Compl. ¶ 18), Plaintiffs have not submitted any evidence to support this claim.

In Plaintiffs' opposition to Liu's summary judgment motion, they argue that "[Liu] has not introduced any evidence whatsoever demonstrating that Defendants had gross annual sales of less than $500,000." (Pls.' Opp'n to Liu Mot. at 6.)  Yet Plaintiffs appear to misunderstand their burden at summary judgment.  Summary judgment must be granted if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp., 477 U.S. at 322; see also Ethelberth, 91 F. Supp. 3d at 354 ("The plaintiff-employee bears the burden of establishing FLSA coverage to prove his employer's liability."); Twin Labs., Inc., 900 F.2d at 568 (noting that party opposing summary judgment may not rely on conclusory allegations).

Plaintiffs have failed to present any evidence, either in the form of sworn statements or documentation, indicating that Oceanica made at least $500,000 in gross annual sales. Therefore, Plaintiffs have not met their burden of establishing either individual or enterprise coverage under the FLSA.  Accordingly, the court grants summary judgment in favor of Liu on Plaintiffs' FLSA claims.

### 2.    Against Chen and Zhu

Plaintiffs argue that Chen and Zhu qualify as employers under the FLSA, solely on the basis that they are listed as Vice President and Secretary in the shareholder agreement. (See Pls.' Opp'n to Chen & Zhu Mot. ¶¶ 11-28 ("Plaintiff disputes that Chen and Zhu were not actively involved in the operations of the Restaurant, as they held the position of Vice President and Secretary, respectively, of Oceanica.") (citing Shareholder Agreement).)  This evidence is not enough to defeat summary judgment.

18

"Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." Irizarry, 722 F.3d at 109; see also Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12-CV-4380 (RML), 2014 WL 3734489, at *9 (E.D.N.Y. July 28, 2014) ("Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees."). In order to demonstrate that a defendant acted as an employer, a plaintiff must show "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation . . . ." Irizarry, 722 F.3d at 109. Plaintiffs have failed to do so here.

Plaintiffs have not presented any evidence of Chen or Zhu's individual involvement in Oceanica, let alone any evidence that they exercised control over Oceanica's employees. Nothing in the record suggests that either Chen or Zhu "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, [or] (4) maintained employment records." Irizarry, 722 F.3d at 105.

The Second Circuit has noted that the determination of employer status is rarely suitable for summary judgment. See Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 143-44 (2d Cir. 2008). However, summary judgment must be granted where the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. 477 U.S. at 322. Here, no evidence in the record could lead a reasonable juror to find that Chen or Zhu acted as Plaintiffs' employers. See Bravo v. Eastpoint Int'l, Inc.,

No. 99-CV-9474 (WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing FLSA claim against fashion designer Donna Karan, because plaintiffs only alleged her status as owner of the employer company and failed to allege any "fact which would tend to establish her power to control the plaintiff workers"). Accordingly, the court grants summary judgment in favor of Chen and Zhu on Plaintiffs' FLSA claims.

### B. Plaintiffs' NYLL Claims

#### 1. Against Chen and Zhu

For the reasons outlined above, the court finds that Plaintiffs have failed to demonstrate a disputed issue of material fact as to whether Chen and Zhu acted as Plaintiffs' employers under either the FLSA or NYLL. See Sethi, 974 F. Supp. 2d at 188 ("District courts in this Circuit 'have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010))). Accordingly, the court grants summary judgment in favor of Chen and Zhu on Plaintiffs' NYLL claims.

#### 2. Against Liu

Liu has testified that she never worked at Oceanica and that she never had any authority or responsibility over Oceanica's employees or the terms or conditions of their employment. (Decl. of Xi Liu ("Liu Decl.") (Dkt. 111) ¶¶ 2-4.) However, both Chen and Zhu have testified that Liu in fact did work at Oceania. (Chen Dep. at 17-18; Zhu Dep. at 19:5-7.) Chen further testified that that Liu "was in charge of everything there" (Chen Dep. at 34:2-3), that she "manag[ed] the money," (id. at 35:13), and that other employees called her "the boss lady" (id. at 34:24-25).

Viewing the evidence in the light most favorable to the non-moving parties, disputed issues of fact remain that prevent the court from determining whether Liu qualifies as an employer under the NYLL. Although the evidence in the record is scarce, a reasonable juror could find that Liu worked at Oceanica in a position that gave her the power to control the terms and conditions of Plaintiffs' employment. See Jin Dong Wang v. LW Rest., Inc., 81 F. Supp. 3d 241, 253-55 (E.D.N.Y. 2015) (finding that although defendant testified that she was only a cashier, conflicting evidence indicated that she had authority to control other employees). Accordingly, the court denies Liu's motion for summary judgment on Plaintiffs' NYLL claims.

## C.    Oceanica and Liu's Cross-Claims

In Liu and Oceanica's cross-claims, they allege that Cross-Claim Defendants took over control of the restaurant, excluding Wang and absconding with his share of the business's funds. (Answer to Am. Compl. ¶¶ 153-55.) As an initial matter, the court notes that Oceanica has not retained counsel and, as such, may not maintain these cross-claims pro se. See Latttanzio, 481 F.3d at 139-40; Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 23 (2d Cir. 1983); J & J Sports Prods., Inc. v. Morley's Tavern Inc., No. 13-CV-5211 (RRM), 2014 WL 4065096, at *5 (E.D.N.Y. May 9, 2014), adopted by 2014 WL 4075162 (E.D.N.Y. Aug. 15, 2014). Moreover, the cross-claims primarily allege an injury to Wang; however, he is no longer represented by Wong and has never been a party to the cross-claims. That leaves Liu as the sole Cross-Claim Plaintiff. For the following reasons, the court finds that Liu likely lacks standing to bring these cross-claims. Moreover, even assuming Liu does have standing, she has failed to introduce sufficient evidence to demonstrate a disputed issue of material fact.

First, the cross-claims allege conspiracy, fraud, unjust enrichment, breach of fiduciary duty, and conversion, premised on allegations that Cross-Claim Defendants defrauded Wang, divesting him of $2 million in investments and control of his portion of the business, and

destroyed Oceanica's records. (See Answer to Am. Compl. ¶¶ 130, 153-55, 159-63.) To the extent that Liu seeks to assert these claims on behalf of Wang, she may do so only on a theory of third-party standing. See Kowalski v. Tesmer, 543 U.S. 125, 129-30 (2004) (noting the rule that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," but "recognizing that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another" (internal quotation marks and citation omitted)).

"In addition to meeting 'the constitutional prerequisites of standing,' namely '(1) injury-in-fact, (2) causation, and (3) redressability,' a plaintiff seeking third-party standing in federal court must also satisfy the prudential prerequisites of standing by demonstrating a close relation to the injured third party and a hindrance to that party's ability to protect its own interests." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 174 (2d Cir. 2005). Liu has not suggested that she maintains a close relation to her ex-husband, nor that he faces any hindrance to his ability to protect his own interests. Therefore, she lacks third-party standing to assert cross-claims on his behalf.

Next, Liu herself has not alleged any individual injury other than that she has been "forced to defend a lawsuit based solely on the fraudulent activities of the Cross-Claim Defendants" (Answer to Am. Compl. ¶ 185), and that she was "unjustly brought into a lawsuit caused by the Cross-Claim Defendants' unjust enrichment" (id. ¶ 193). Although it is a reach, one might plausibly read Liu's cross-claims to allege that Cross-Claim Defendants conspired to expose Wang and Liu to liability by falsely representing that they controlled the restaurant and by destroying the business records so as to conceal Cross-Claim Defendants' management responsibility. Even so, Liu has presented insufficient evidence to establish a disputed issue of

22

material fact. Indeed, her sole sworn statement makes no mention of the facts alleged in the cross-claims at all. (See Liu Decl.)

In her response to Chen and Zhu's motion for summary judgment on her cross-claims, Liu points to the sublease and shareholder agreement as evidence of Chen and Zhu's "involvement in forming, financing, and running the restaurant and corporations involved." (Liu Mem. in Opp'n to Chen & Zhu Mot. (Dkt. 103) at 3.) However, even viewing this evidence in the light most favorable to Liu, Chen and Zhu's purported involvement in forming, financing, and running the restaurant says nothing about whether they excluded Wang or withdrew shared funds from Oceanica's bank account, or whether they conspired with Zheng and Ye to misrepresent Oceanica's ownership and expose Wang and Liu to liability. In other words, these facts simply are not material to the cross-claims. See Anderson, 477 U.S. at 248 (a fact is material if it "might affect the outcome of the suit under the governing law"). Therefore, Liu has failed to demonstrate a "genuine dispute as to any material fact" and Chen and Zhu are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); cf Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) ("Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."). Accordingly, the court grants summary judgment in favor of Chen and Zhu on Liu and Oceanica's cross-claims.

## IV.    CONCLUSION

For the reasons set forth above, the court GRANTS summary judgment in favor of Liu, Chen, and Zhu on Plaintiffs' FLSA claims; GRANTS summary judgment in favor of Chen and Zhu on Plaintiffs' NYLL claims and Liu and Oceanica's cross-claims; and DENIES summary judgment to Liu on Plaintiffs' NYLL claims.  Plaintiffs' NYLL claims against Liu therefore survive summary judgment, and the court does not reach the claims or cross-claims brought against Oceanica, Wang, Zheng, or Ye.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       March **3/**, 2016

NICHOLAS G. GARAUFIS
United States District Judge

24