UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEGUN CHEN, YIMING XUE, SAUCHUN
CHENG, XINPING ZOU, GUIYING CHEN,
JIANHUA FU, TAIHWA MA YING, YAYUN
HUANG, ZHIKUN QI, JUNBAO LV, XIUJUAN
LIN, FENGQIN LUO, XIONGHU BAI, JICHAO
ZHENG, SHANGQIN CHEN, WENRONG LU,
WENLIANG GAO, and ZHENGJI CHAO,

                                        Plaintiffs,

                -against-

OCEANICA CHINESE RESTAURANT, INC.
d/b/a OCEANICA SEAFOOD RESTAURANT,
ZHIGANG WANG, XI LIU, TIANMING ZHENG
a.k.a. TIN CHENG, A YE, QINZHOU CHEN,
JINPING ZHU, and JOHN DOES #1-10,

                                        Defendants.

**MEMORANDUM & ORDER**
**13-CV-4623 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

In 2013, Plaintiffs brought suit against Defendants seeking to re-
cover unpaid overtime pay and damages under the Fair Labor
Standards Act. (Compl. (Dkt. 1).) They then filed the operative
Second Amended Complaint on December 30, 2019. (Sec. Am.
Compl. (Dkt. 162).) On October 16, 2020, Plaintiffs Kegun Chen,
Yiming Xue, Sauchun Cheng, Xinping Zou, Guiying Chen,
Taihwa Ma Ying, Yayun Huang, Zhikun Qi, Xiujuan Lin, Fengqin
Luo, Xionghu Bai, Wenrong Lu, and Wenliang Gao moved for
default judgment against Oceana, Wang, and Ye. (Mot. (Dkt.
174).) The court referred this motion to Magistrate Judge Peggy
Kuo for a report and recommendation ("R&R"). (Mot.; May 4,
2021 Order Referring Mot.) Judge Kuo issued the annexed R&R
on February 28, 2023, recommending that the court grant in part

1

and deny in part Plaintiffs' motion. She also recommended damages, post-judgment interest, and pre-judgment interest for the moving Plaintiffs. The specific damages amounts, pre-judgment interest rates, and post-judgment interest rates are detailed in the R&R.

No party has objected to Judge Kuo's R&R, and the time to do so has passed. *See* Fed. R. Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *See Rubinstein & Assocs., PLLC v. Entrepreneur Media, Inc.*, 554 F. Supp. 3d 506, 510 (E.D.N.Y. 2021). Having found none, the court ADOPTS the R&R in full.

A copy of this order is being filed on ECF. The court directs the Clerk of Court to mail it by regular mail with proof of mailing to Defendants at the following addresses:

> OCEANICA CHINESE RESTAURANT, INC.
> d/b/a Oceanica Seafood Restaurant
> 3702 Main St 2nd Floor
> Flushing, NY 11354
>
> Zhigang WANG
> 46-23 157th Street
> Flushing, NY 11355
>
> A YE
> 43-20 Colden St. 1st Floor
> Flushing, NY 11355

SO ORDERED.

Dated:    Brooklyn, New York
          March 17, 2023

                                        s/Nicholas G. Garaufis

                                        NICHOLAS G. GARAUFIS
                                        United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
Kegun CHEN, Yiming XUE, Sauchun CHENG, :
Xinping ZOU, Guiying CHEN, Jianhua FU,        :
Taihwa Ma YING, Yayun HUANG, Zhikun QI, :
Junbao LV, Xiujuan LIN, Fengqin LUO,           :
Xionghu BAI, Jichao ZHENG, Shangqin CHEN,:
Wenrong LU, Wenliang GAO, and Zhengji       :
CHAO,                                                                   :
                                                                             :
                                           Plaintiffs,           :
                                                                             :
                   -against-                                        :
                                                                             :
OCEANICA CHINESE RESTAURANT, INC. :
d/b/a Oceanica Seafood Restaurant, Zhigang   :
WANG, Xi LIU, Tianming ZHENG (a/k/a Tin :
Cheng), A YE, Qinzhou CHEN, Jinping ZHU,   :
and JOHN DOES # 1-10,                                  :
                                                                             :
                                           Defendants.     :
------------------------------------------------------------------- x

**REPORT AND
RECOMMENDATION**

13-CV-04623 (NGG)(PK)

**Peggy Kuo, United States Magistrate Judge:**

In a Second Amended Complaint, Kegun Chen, Yiming Xue, Sauchun Cheng, Xinping Zou,

Guiying Chen, Jianhua Fu,[1] Taihwa Ma Ying, Yayun Huang, Zhikun Qi, Junbao Lv, Xiujuan Lin,

Fengqin Luo, Xionghu Bai, Jichao Zheng, Shangqin Chen, Wenrong Lu, Wenliang Gao, and Zhengji

Chao[2] brought suit against Oceanica Chinese Restaurant, Inc. d/b/a Oceanica Seafood Restaurant

("Oceanica"), Zhigang Wang, Xi Liu, Tianming Zheng (a/k/a Tin Cheng), A Ye, Qinzhou Chen,

Jinping Zhu, and John Does # 1-10 for violations of the Fair Labor Standards Act ("FLSA") and the

New York Labor Law ("NYLL").

---

[1] Plaintiff's counsel acknowledged that Plaintiff Fu was erroneously included in the Second Amended Complaint (Dkt. 193), and his case was dismissed. (Order dated Sept. 28, 2021.)

[2] Jichao Zheng and Zhengji Chao are named separately as Plaintiffs but are the same person. (Dkt. 192 at 3.)

Plaintiffs Kegun Chen, Yiming Xue, Sauchun Cheng,[3] Xinping Zou, Guiying Chen, Taihwa Ma Ying, Yayun Huang, Zhikun Qi, Xiujuan Lin, Fengqin Luo, Xionghu Bai, Wenrong Lu, and Wenliang Gao ("Plaintiffs")[4] moved for default judgment against Oceanica, Wang, and Ye (collectively, "Defendants").[5] ("Motion," Dkt. 174.)

The Honorable Nicholas G. Garaufis referred the Motion to the undersigned for a report and recommendation. For the reasons stated below, the undersigned respectfully recommends that the Motion be granted, except as to the amounts awarded, as detailed below.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Factual Background**

The following facts are taken from the Second Amended Complaint ("SAC," Dkt. 162), the Affirmation of attorney Shan Zhu and supporting exhibits (Dkt. 176), and the Affirmations of each of the Plaintiffs filed in support of the Motion (Dkts. 177-189) and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).[6]

---

[3] Plaintiff Cheng was included in the Motion although she died on February 14, 2019. (Certificate of Death, Dkt. 197-1.) Plaintiffs' counsel has requested that her case be dismissed. (Status Report, Dkt. 201.) The undersigned issued a Report and Recommendation respectfully recommending that, pursuant to Rules 25(a)(1) and 41, the case be dismissed as to Plaintiff Cheng. (Docket Entry dated September 14, 2022.) Accordingly, Cheng's claims in the Motion are not addressed in this Report and Recommendation.

[4] Plaintiffs' counsel moved to withdraw as counsel to non-moving plaintiffs Junbao Lv, Jichao Zheng (a/k/a Zhengji Chao), and Shangqi Chen because counsel was not able to get in contact with them. The Court granted the motion on September 12, 2022. (Order dated Sept. 12, 2022.)

[5] No affidavits of service have been filed to indicate that the Second Amended Complaint was served on Defendants Zheng, Chen, or Zhu. In addition, as discussed below, all claims against defendant Liu have been settled and dismissed. (*See* Dkt. 157.)

[6] Where there are discrepancies between factual allegations in the SAC and signed Affirmations of Plaintiffs, the undersigned has relied on the facts in the Affirmations as more accurate. "[A] court may rely on 'detailed affidavits and documentary evidence,' in addition to the plaintiff's complaint," to determine damages in a default judgment. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, at *29 (E.D.N.Y. 2015) (citation

### A.    The Defendants

Oceanica is a restaurant with a principal place of business in Flushing, New York.  (SAC ¶¶ 41, 54.)  At least 100 employees work at Oceanica.  (SAC ¶ 55.)  Oceanica "generated more than $500,000 in revenues for the years of 2012 and 2013."  (SAC ¶ 50.)  It "[has] been and continue[s] to be an employer engaged in interstate commerce and/or the production of goods for commerce." (SAC ¶ 52.)

Zhigang Wang is the Chief Executive Officer, owner, and shareholder of Oceanica, and resides in Flushing, New York.  (SAC ¶ 42.)  A Ye is a manager of Oceanica and also resides in Flushing, New York.  (SAC ¶ 45.)

Defendants had the power to hire and fire employees, establish their wages, set their work schedules, and maintain their employment records.  (SAC ¶ 48.)

### B.    Allegations Common to All Plaintiffs

The Plaintiffs were all employed in various non-managerial, non-supervisory roles at Oceanica. None of the Plaintiffs were ever provided with a wage notice at the time of hire describing their rate or rates of pay, their employer's name and address, telephone number, or other information required by law.  (*See* SAC ¶¶ 56, 136.)  None of the Plaintiffs received wage statements.  (*Id.* ¶ 138.)  None of the Plaintiffs were paid overtime or spread-of-hours pay, even though they regularly worked more than forty hours per week, and many worked more than ten hours per day.  (*Id.* ¶ 102.)

### C.    Individual Plaintiffs' Allegations

#### 1.    *Plaintiff Kegun Chen*

Kegun Chen was employed by Defendants as a chef from May 1, 2013 to June 27, 2013.  (SAC ¶ 57; Kegun Chen Aff. ¶ 2.)  He worked seven days a week, twelve hours a day, for a total of 84 hours

---

omitted.)  Plaintiffs' affirmations are "presumed to be correct in the absence of any rebuttal evidence proffered by Defendants."  *Duro v. BZR Piping & Heating Inc.*, 2011 WL 710449, at *3 (E.D.N.Y.,2011).

per week, but was never paid.  (SAC ¶ 58; Kegun Chen Aff. ¶ 3.)[7]

      2.    *Plaintiff Yiming Xue*

Yiming Xue worked for Defendants as a chef from December 6, 2012 through June 27, 2013. (SAC ¶ 59; Xue Aff. ¶ 2.)[8]  Xue was paid a flat rate of $4,000 per month to work from 10:00 a.m. to 9:00 p.m. six days per week, for a total of 66 hours per week.  (SAC ¶ 60; Xue Aff. ¶¶ 3-4.)  Xue was not paid for the last three weeks he worked.  (SAC ¶ 60; Xue Aff. ¶ 5.)

      3.    *Plaintiff Xinping Zou*

Xinping Zou worked for Defendants from October 12, 2012 to June 27, 2013 as a cleaning worker.  (SAC ¶ 63; Zou Aff. ¶¶ 2-5.)[9]  Zou was promised $1,650 per month, but "was typically paid $175 per week" to work from 9:00 a.m. to 8:00 p.m. six days a week, for a total of 66 hours per week. (SAC ¶¶ 64-65; Zou Aff. ¶¶ 3-5.)  Defendants did not pay Zou for the last eight weeks Zou worked. (Zou Aff. ¶ 6.)

      4.    *Plaintiff Guiying Chen*

Guiying Chen was employed by Defendants as a dim sum server from June 17, 2013 to June 27, 2013.  (SAC ¶ 66; Guiying Chen Aff. ¶ 2.)  She worked eleven hours a day, six days per week, for a total of 66 hours per week, but was only paid $60 in total.  (SAC ¶ 67; Guiying Chen Aff. ¶¶ 3-4.)

---

[7] The Second Amended Complaint alleges that Kegun Chen was promised a monthly wage of $2,500; however, his Affirmation is silent as to any rate of pay, and Plaintiffs' counsel calculated Kegun Chen's damages based on the minimum wage.  (*See* SAC ¶ 58; Kegun Chen Aff.; "Damages Calculation," Exhibit 7 to the Zhu Aff., Dkt. 176-7.)  Because the Affirmation does not contradict the SAC, the undersigned accepts the allegation in the SAC that Kegun Chen was promised a monthly wage of $2,500.

[8] The Second Amended Complaint and Xue's Affirmation both state that Xue worked until June 27, 2013. Plaintiffs' counsel's damages calculations are based on an end date of May 13, 2013.  (Damages Calculation.) There is no explanation for the discrepancy, and the undersigned credits the statement in Xue's Affirmation.

[9] The Second Amended Complaint and Zou's Affirmation both state that Zou worked for Defendants from approximately November 2012 to June 2013.  (SAC ¶ 63; Zou Aff. ¶¶ 2-3.)  Zou's Affirmation also states that Zou worked for a fixed weekly rate from October 12, 2012 to June 27, 2013.  (Zou Aff. ¶ 5.)  The undersigned credits the more specific dates provided in Zou's Affirmation.

### 5. *Plaintiff Taihwa Ma Ying*

Taihwa Ma Ying worked for Defendants from June 19, 2013 to June 27, 2013 as a delivery person. (SAC ¶ 78; Ying Aff. ¶ 2-3.) Ying worked nine-and-a-half hours a day, six days a week, for a total of 57 hour per week, and although promised $7.25 per hour, was never paid. (SAC ¶ 79; Ying Aff. ¶¶ 3-5.)

### 6. *Plaintiff Yayun Huang*

Yayun Huang worked for Defendants from December 3, 2012 to June 27, 2013 as a "miscellaneous worker." (SAC ¶ 80; Huang Aff. ¶ 2.) Huang worked eleven hours a day, six days a week, for a total of 66 hours per week, at a rate of $1,600 per month, but was not paid for her last six weeks of work. (SAC ¶ 81; Huang Aff. ¶¶ 3-5.)

### 7. *Plaintiff Zhikun Qi*

Zhikun Qi worked for Defendants from March 12, 2013 to June 27, 2013 as a chef. (SAC ¶¶ 24, 82; Qi Aff. ¶ 2.)[10] Qi worked eleven hours a day, six days a week, for a total of 66 hours per week,, at a rate of $2,800 per month, but was not paid for the last four weeks and two days worked. (SAC ¶ 83; Qi Aff. ¶¶ 3-5.)[11]

### 8. *Plaintiff Xiujuan Lin*

Xiujuan Lin worked for Defendants from March 12, 2012 to June 27, 2013 as a chef. (SAC ¶¶ 28, 86; Lin Aff. ¶ 2.)[12] Lin worked eleven hours a day, six days per week, for a total of 66 hours

---

[10] Paragraph 24 of the Second Amended Complaint and Qi's Affirmation state that Qi started work in 2012. (Qi Aff. ¶ 3.) However, paragraph 82 of the Second Amended Complaint and the Damages Calculation state that Qi started work in 2013. The undersigned credits Qi's Affirmation and concludes that Qi started work in 2012.

[11] Paragraph 83 of the Second Amended Complaint states that Qi was not paid for the last four weeks and four days, but Qi's Affirmation states he was not paid the last four weeks and two days. (Qi Aff. ¶ 5.) The undersigned credits Qi's Affirmation.

[12] Paragraph 86 of the Second Amended Complaint and Lin's Affirmation state that Lin was employed from March 12, 2012 through June 27, 2013. (Lin Aff. ¶ 3.) However, paragraph 28 of the Second Amended

per week.  (Lin Aff. ¶ 3.)  Lin was paid $2,600 in March 2012, and $3,000 from April 2012 to June 2013.  (SAC ¶ 87; Lin Aff. ¶¶ 4-5.)  Defendants failed to pay Lin for his last one month and one week. (SAC ¶ 87; Lin Aff. ¶ 6.)[13]

9.    *Plaintiff Fengqin Luo*

Fengqin Luo worked as a delivery person for Defendants from May 9, 2013 to June 27, 2013. (SAC ¶ 88; Luo Aff. ¶ 2.)  Luo worked ten-and-a-half hours a day, six days per week, for a total of 63 hours per week.  (SAC ¶ 89; Luo Aff. ¶ 3.)[14]  Luo was promised $7.25 per hour, but Defendants did not pay Luo's wages from June 2 to June 27, 2013.  (SAC ¶ 89; Luo Aff. ¶¶ 4-5.)[15]

10.   *Plaintiff Xionghu Bai*

Xionghu Bai worked for Defendants from May 28, 2013 to June 27, 2013 as a "miscellaneous worker."  (SAC ¶ 90; Bai Aff. ¶ 2.)  Bai worked eleven hours a day, six days a week, for a total of 66 hours per week, and received $2,000 per month, but was not paid from June 17 to June 27, 2013. (SAC ¶ 91; Bai Aff. ¶¶ 3-5.)

11.   *Plaintiff Wenrong Lu*

Wenrong Lu worked as a maintenance services worker for Defendants from June 2012 to June

---

Complaint and the Damages Calculation state that Lin started work on March 12, 2013.  The undersigned credits Lin's Affirmation and concludes that Lin started work on March 12, 2012.

[13] Paragraph 87 of the Second Amended Complaint alleges that Lin was underpaid by $3,200, but Lin's Affirmation does not specify a specific amount of damages.  (Lin Aff. ¶ 6.)  Because Lin's Affirmation states that he was not paid for one month and one week, the undersigned calculates Lin's damages based on the time Lin was not paid, as calculated in the discussion of damages below.

[14] Paragraph 89 of the Second Amended Complaint states that Luo "occasionally" worked on Sundays, but Luo's Affirmation does not state that Luo worked on Sundays and provides no other details as to the frequency or number of hours worked on Sundays.  (Luo Aff. ¶ 3.)  Accordingly, the undersigned has calculated Luo's damages based on the six-day workweek alleged in the SAC and Luo's Affirmation.

[15] Paragraph 89 of the Second Amended Complaint states that Luo was not paid from June 3 to June 27, while Luo's Affirmation states that he was not paid from June 2 to June 27.  (Luo Aff. ¶¶ 4-5.)  The undersigned relies upon Luo's Affirmation in determining that the unpaid period began on June 2.

29, 2013. (SAC ¶ 98; Lu Aff. ¶ 3.)[16]  Lu worked from 8:00 a.m. to 5:00 p.m., six days a week, for a

total of 54 hours per week. (SAC ¶ 99; Lu Aff. ¶ 3.)[17]  Lu was paid a fixed daily rate of $160 per day,

but was not paid for forty-one days, or $6,560 in wages owed. (SAC ¶ 99; Lu Aff. ¶ 3-5.)[18]

      12.    *Plaintiff Wenliang Gao*

Wenliang Gao worked for Defendants from March 20, 2013 to June 15, 2013 as a chef. (SAC

¶ 100; Gao Aff. ¶ 2.)  Gao worked eleven hours a day, six days a week, for a total of 66 hours per

week. (SAC ¶ 101; Gao Aff. ¶ 3.)[19]  From March 20, 2013 through April 20, 2013, Gao was paid a

fixed monthly rate of $2,300, regardless of hours worked, and from April 20, 2013 through June 15,

2013 was paid $2,500 each month regardless of hours worked. (SAC ¶ 101; Gao Aff. ¶¶ 4-5.)[20]  Gao

states he did not receive $500 of his promised wages. (SAC ¶ 101; Gao Aff. ¶ 6.)

## II.   **Relevant Procedural Background**

---

[16] Lu's Affirmation and the Damages Calculation state that Lu was employed from June 2012 through June 29, 2013. (Lu Aff. ¶¶ 2-3; Damages Calculation.)  The undersigned therefore finds that the Second Amended Complaint's allegation that Lu started to work for Defendants in "January, 2013" is incorrect. (SAC ¶ 38.)

[17] Lu's Affirmation states Lu worked "six to seven days" per week, but the Second Amended Complaint states that Lu typically worked six days per week, and both Lu's Affirmation and the Second Amended Complaint allege a 54-hour work week. (*Compare* SAC ¶ 99 *with* Lu Aff. ¶ 3.)  Accordingly, the undersigned has calculated Lu's damages based on the six-day, 54-hour work week.

[18] Following a motion hearing before the undersigned, Plaintiffs were directed to submit a supplemental affidavit from Plaintiff Lu as to the specific dates of Plaintiff Lu's unpaid wages. (Order dated Sept. 9, 2021.)  On October 2, 2021, Plaintiffs' counsel filed a letter attaching a timecard in Lu's possession and confirming that Lu had not been paid for 41 days between "April 8" and "June 29." (*See* Dkt. 200; "Lu Timecard," Dkt. 200-1.)

[19] Gao's Affirmation states that Gao worked "six to seven days" per week, but the Second Amended Complaint states that Gao typically worked six days per week, and both Gao's Affirmation and the Second Amended Complaint allege a 66 hour work week. (*Compare* SAC ¶ 99 *with* Gao Aff. ¶ 3.)  Accordingly, the undersigned has calculated Gao's damages based on the six-day, 66-hour work week.

[20] Paragraph 101 of the Second Amended Complaint alleges inconsistently that Gao was paid $2,300 per month from March 20, 2013 to June 15, 2013, and paid $2,500 per month from April 21, 2013 to June 15, 2013.  Gao's Affirmation clarifies the timeline. (*See* Dkt. 183 ¶¶ 4-5 ("From March 2013 to April 20, 2013, I was paid a fixed monthly rate at $2,300 regardless [of] the hours I worked.  From April 20 to June 15, 2013, I was paid … $2,500 regardless [of] the hours I worked.").)

On August 16, 2013, Kegun Chen filed the Complaint on behalf of himself and all other similarly situated employees against Oceanica, Xiaogang Wang,[21] Xi Liu, Tianming Zheng (a/k/a Tin Cheng), A Ye, and John Does 1-10.[22] (Dkt. 1.) Oceanica, Liu, and Wang filed an answer on September 30, 2013. (Dkt. 16.)

A collective action under the FLSA was certified on April 2, 2014. (Dkt. 52.) Plaintiffs filed consents to become parties to the collective action on the following dates: Xue, Zou, Ying, and Guiying Chen filed consents on September 13, 2013 (Dkts. 4-6, 8); Bai, Luo, and Qi filed consents on October 1, 2013 (Dkts. 17-18, 20); Huang and Lin filed consents on October 2, 2013 (Dkts. 21-22); Lu filed a consent on September 23, 2014 (Dkt. 78); and Gao filed a consent on May 16, 2019 (Dkt. 146).

On April 29, 2014, the Court granted Defendant Wang's counsel's motion to withdraw as counsel, and Wang was advised of his obligations as a *pro se* party. (*See* Dkt. 56; Order dated Apr. 29, 2014.)

On April 29, 2014, Plaintiffs filed an Amended Complaint (Dkt. 60), to which Liu and Oceanica filed an answer and counterclaims on May 19, 2014. (Dkt. 71.) Wang and Ye did not answer the Amended Complaint.

On February 11, 2015, the Court granted the motion filed by counsel for Oceanica to withdraw as counsel. (Dkts. 82, 90.) Although the Court sent Oceanica a notice that failure to appear through counsel could result in default (Dkt. 91), Oceanica failed to appear through new counsel. Plaintiffs requested a certificate of default against Oceanica and Wang (Dkt. 124), which the Clerk granted on

---

[21] The Complaint uses a different first name for Defendant Wang. It appears to be an error that was corrected in the Amended Complaint and Second Amended Complaint.

[22] Two of the John Doe defendants were later identified, but the claims against them were dismissed. (Dkts. 41, 117.) The remaining John Doe defendants were never identified.

July 11, 2016 (Dkt. 125).

All Plaintiffs except Fu, whom Plaintiffs' counsel was unable to reach, agreed to settle the case with defendant Liu.[23] (Minute Entry dated Sept. 25, 2018; *see also* Dkt. 140.) The Court approved the settlement agreement, and Liu was dismissed from the case on November 8, 2019. (Dkt. 157.)

Plaintiffs filed the Second Amended Complaint on December 30, 2019, adding the opt-in plaintiffs as named plaintiffs. (Dkt. 162.) Plaintiffs assert five claims to relief: (1) failure to pay overtime and minimum wage in violation of the FLSA; (2) failure to pay minimum wages, overtime and spread of hours pay in violation of the NYLL; (3) failure to pay promised wages in violation of the NYLL; (4) failure to provide wage statements and wage notices, in violation of the NYLL; and (5) failure to reimburse tools of the trade.[24] (*See* SAC.)

Plaintiffs served the Second Amended Complaint on Wang on February 18, 2020, on Ye on February 19, 2020, and on Oceanica on March 13, 2020. (Dkts. 166-168.) Wang, Ye, and Oceanica failed to appear, and Plaintiffs requested certificates of default on June 22, 2020 (Dkt. 169), which the Clerk entered on June 29, 2020 (Dkt. 171.) On October 16, 2020, Plaintiffs moved for default judgment against Wang, Ye, and Oceanica. (Dkt. 174.) The Motion was referred to the undersigned on May 4, 2021. On October 2, 2021, Plaintiffs provided additional documentation of Lu's unpaid wages.

## DISCUSSION

### I.   Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of

---

[23] The Court granted Plaintiffs' counsel's motion to withdraw as counsel to Fu. (Dkt. 137; Order dated Oct. 31, 2018; Minute entry dated Nov. 30, 2018; Dkt. 140; Order dated Dec. 14, 2018.)

[24] The Motion does not seek default judgment on the fifth claim.

Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the

employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.   Jurisdiction

### A.   Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.   Service on Defendants

Plaintiffs served the Second Amended Complaint on Oceanica by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).  (Dkt. 168.)

Plaintiffs served the Second Amended Complaint on Wang by leaving it with a person of suitable age and discretion at his home and then mailing a copy in an envelope marked "Personal and Confidential" on February 19, 2020 to the same address.  N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e). (Dkt. 165.)

Plaintiffs served the Second Amended Complaint on Ye by personally delivering it to him. N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e).  (Dkt. 166.)

Service of the Second Amended Complaint on Defendants was therefore proper.

Although Oceanica and Wang filed answers to the Complaint and Amended Complaint, they failed to answer or respond to the Second Amended Complaint.  Defendant Ye did not respond to the Complaint, Amended Complaint, or Second Amended Complaint.

### C.     Personal Jurisdiction

"[S]erving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Plaintiffs do not specify whether Oceanica is a New York corporation but do allege that its principal place of business is within New York state and that it transacts business within the state. (*See, e.g.*, SAC ¶¶ 6, 41.)  New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state, *see Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018), or non-domiciliary corporations that transact business within the state, N.Y. C.P.L.R. § 302(a)(1).  Regardless of whether Oceanica is a New York Corporation, because it transacts business within the state and was properly served with the summons and complaint, the Court has personal jurisdiction over it.

New York State has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).  Defendants Wang and Ye have last known places of residence in Flushing and Elmhurst, respectively. (*See* Dkt. 190.)  New York also has specific jurisdiction over individuals who 'transact any business within the state' so long as 'the cause of action arises from that transaction.'" *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60).  Wang was CEO, owner, and manager of Oceanica, and Ye was a manager of Oceanica, and, in those roles, they transacted business in New York.

The Court therefore has personal jurisdiction over the Defendants.

### III.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>

In addition to the Motion (Dkt. 174), Plaintiffs filed the following documents in support of

the Motion: a memorandum of law (Dkt. 175); the Clerk's certificate of default against each Defendant (Dkt. 176-6); a copy of the Second Amended Complaint (Dkt. 176-1); supporting affirmations from Plaintiffs' counsel and the moving Plaintiffs (Dkts. 176-189); and proof that the individual Defendants are not infants, in the military, or incompetent (Dkts. 165, 166). Plaintiffs did not submit a proposed order of default judgment but did submit a proposed order to show cause on a hearing on the Motion. (Dkt. 176-8.) Plaintiffs also filed a certificate of service, indicating that the Motion and supporting documents were sent to Defendants as required by Local Civ. Rules 55.2(c). (Dkt. 190.)

These documents comply with the requirements of Local Civil Rules 7.1 and 55.2.

## IV.    Liability under the FLSA and NYLL

### A.    Statute of Limitations

The FLSA and the NYLL have different statutes of limitations. The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* (citation omitted). Under the NYLL, the statute of limitations is six years. *See* NYLL §§ 198(3), 663(3).

"An amended complaint 'relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, … transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019) (quoting Fed. R. Civ. P. 15(c)(1)(B)).

"[I]n an FLSA collective action, the statute of limitation[s] runs for each plaintiff until he or she affirmatively opts in to the lawsuit." *Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS)(SIL), 2017 WL 8813132, at *12 (E.D.N.Y. Dec. 28, 2017), *R&R adopted*, No. 14-CV-1647(JS)(SIL), 2018 WL 878988 (E.D.N.Y. Feb. 14, 2018) (citing *Chimes v. Peak Sec. Plus, Inc.*, 137 F.Supp.3d 183, 204 (E.D.N.Y. 2015)). "The statute of limitations is tolled on the date on which the consents to join suit were filed." *Id.*

However, a statute of limitations defense is "an affirmative defense that may be forfeited or waived." *Doe v. Constant*, 354 F.App'x 543, 545 (2d Cir. 2009) (affirming entry of default despite potential statute of limitations defense).

The Second Amended Complaint relates back to the original Complaint because the allegations of the opt-in Plaintiffs in the Second Amended Complaint arise out of the conduct, transaction, or occurrence set out in the original Complaint. Defendants also had actual notice that the additional named Plaintiffs might assert claims arising out of the same transaction or occurrence because the original Complaint asserted class and collective claims in addition to the claims of Plaintiff Kegun Chen.[25] The original Complaint was filed on August 16, 2013.

Because Defendants have defaulted, the FLSA's three-year statute of limitations applies. Kegun Chen, Xue, Zou, Ying, Guiying Chen, Bai, Luo, Qi, Huang, Lin, and Lu filed their consents before September 23, 2014, and thus their claims, which all arise in 2012 and 2013, are entirely within the limitations period of both the FLSA and the NYLL. (Dkts. 4-8, 17-18, 20-22, 31, 78.)

Gao did not file his consent until May 16, 2019, although it is dated April 21, 2017. (Dkt. 146.) Nevertheless, because the statute of limitations is an affirmative defense that Defendants have

---

[25] Plaintiffs' counsel's declaration in support of the Second Motion to Amend stated that the purposes of "the proposed amendments are to add [the opt-in Plaintiffs] … and claims for retaliation damages under the FLSA and the NYLL." (Dkt. 161-1 ¶ 2.) Plaintiffs did not include retaliation claims in the Second Amended Complaint.

not asserted in response to the Second Amended Complaint, the undersigned respectfully recommends that all of Plaintiff Gao's claims be considered despite the limitations period.

**B.      Employment Relationship Under the FLSA**

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted). To plead a cause of action under the FLSA, plaintiffs must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiffs are employees within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019). Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

*1.      Whether Defendants are Employers*

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104 (quoting *Barfield*, 537 F.3d at 142.) "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT)(RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

15

   a)      *Defendant Oceanica*

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage. *See Rowe*, 2019 WL 4395158, at *4. The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and … whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe*, 2019 WL 4395158, at *4.

Plaintiffs' allegations satisfy the enterprise coverage test. Plaintiffs allege that Oceanica "generated more than $500,000 in revenues for the years of 2012 and 2013" and that it "[has] been and continue[s] to be an employer engaged in interstate commerce and/or the production of goods for commerce." (SAC ¶¶ 50, 52.) Although these allegations merely repeat the statutory elements, they are sufficient to establish Oceanica's employer status under the FLSA. *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD)(JO), 2012 WL 1107655, *2 (E.D.N.Y. Mar. 30, 2012) (a court may "infer[ ] the requisite interstate commerce connection under [a] sensible approach"). *See Fermin*, 93 F. Supp. 3d at 33 (concluding that defendant "restaurant with an eat-in dining area and over $500,000 in annual sales" was an employer within the meaning of the FLSA because it was reasonable to infer that not all

16

of its sales came exclusively from New York, and that some of the goods used to operate the restaurant "moved or were produced in interstate commerce").

        *b)*        *Defendants Wang and Ye*

Wang and Ye are also employers for FLSA purposes. "The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees ...." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the 'economic realities' test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. The factors that the Court may consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). However, "[t]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Herman*, 172 F.3d at 139 (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)) (alteration omitted).

17

Plaintiffs allege that Wang is the Chief Executive Officer, owner, and shareholder of Oceanica and that Ye is a manager of Oceanica. (SAC ¶¶ 42, 45.) They also allege that Wang and Ye had the power to hire and fire employees, establish their wages, set their work schedules, and maintain their employment records. (*Id.* ¶ 48.) These allegations closely track the *Carter* factors and establish that Wang and Ye are employers for FLSA purposes.

>    2.    *Whether Plaintiffs were Employees*

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Each of the Plaintiffs allege that they were Defendants' employees. (SAC ¶¶ 57, 59, 63, 66, 78, 80, 82, 86, 88, 90, 98, 100.) Plaintiffs' allegations establish that they were employees under the FLSA.

>    3.    *Whether any FLSA exemption applies*

Finally, Plaintiffs must show that they are not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. "Section 13 of the FLSA contains a litany of exemptions …." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014). For example, "bona fide 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advance knowledge in a field of science or learning" are not covered by the FLSA. *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG)(CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (quoting 29 U.S.C. § 213(a)(1)). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

Plaintiffs were employed as chefs, servers, cleaners, delivery workers, maintenance service workers, and "miscellaneous workers." These types of jobs are non-exempt under the FLSA. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 32 (explaining that jobs such as "waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA").

The FLSA therefore applies.

### C.    Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, the Defendants are Plaintiffs' employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.    Wage Violation Claims

Plaintiffs assert claims for four types of wages violations—minimum wages, promised wages above the minimum wage, overtime, and spread-of-hours wages. Zou, Guiying Chen, Ying, and Luo allege either that they were promised wages that were below the minimum wage, were promised the federal minimum wage, or did not specify a promised wage. The remaining Plaintiffs—Kegun Chen, Xue, Huang, Qi, Lin, Bai, Lu, and Gao—allege that they were promised wages above the minimum wage. All Plaintiffs allege that they were not paid the wages they were due, and all Plaintiffs allege overtime and spread-of-hours wage violations.

19

1. _FLSA Wage Claims_

a) *FLSA Minimum Wages*

Under the FLSA, employees must be paid at least the federal minimum hourly wage for each hour that they work. 29 U.S.C. § 206. The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited December 13, 2022). "For purposes of determining whether Plaintiff[s were] paid the prevailing minimum wage, the Court must determine [their] regular hourly rate[s] of pay." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI)(RER), 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018). Under the FLSA, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also* 29 C.F.R. § 778.325. "A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks)" and, once the weekly wage is calculated, "the regular hourly rate of pay...is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113. "For purposes of FLSA, '[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours.'" *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (quotations omitted).

Guiying Chen worked eleven hours a day, six days a week, but was only paid $60 for the ten days she worked. Applying the full amount she received to her first and only full week (six days)—with the additional four days counted as completely unpaid days—and calculating her hourly wage using a 40-hour work week because Defendants fail to rebut the presumption under the FLSA, her

effective hourly wage was $1.50, much less than what was owed under the federal minimum wage. (SAC ¶¶ 66-67; Guiying Chen Aff. ¶ 2-4.)  Guiying Chen has, therefore, established Defendants' liability for failure to pay FLSA minimum wages for the time when she received $1.50 per hour, and also when she received no pay at all.

Zou worked from 9:00 a.m. to 8:00 p.m. six days a week.  (SAC ¶¶ 64-65; Zou Aff. ¶¶ 3-5.) Zou was paid $175 per week for the first 29 weeks of employment, an effective hourly rate of $4.38 calculated using the presumptive 40-hour work week.  (Zou Aff. ¶¶ 3-6.)  Zou was not paid at all for the last eight weeks of employment.  Zou has, therefore, established Defendant's liability for failure to pay FLSA minimum wages.

In addition, the remaining Plaintiffs Kegun Chen, Xue, Ying, Huang, Qi, Lin, Luo, Bai, Lu, and Gao also allege some period of employment during which they received no pay at all.  (SAC ¶¶ 58, 60, 79, 83, 87, 91, 98; Kegun Chen Aff. ¶ 3; Xue Aff. ¶¶ 3-5; Ying Aff. ¶¶ 3-5; Huang Aff. ¶¶ 3-5; Qi Aff. ¶¶ 3-5; Lin Aff. ¶¶ 3-6; Luo Aff. ¶¶ 3-5; Bai Aff. ¶¶ 3-5; Lu Aff. ¶¶ 3-5; Gao Aff. ¶¶ 3-6.) Thus, although some of these Plaintiffs were paid at or above the minimum wage when they received any payment for their work, for the periods when they were not paid anything—that is, $0—they have established minimum wage violations of the FLSA.

The undersigned therefore finds that all Plaintiffs have established Defendants' liability for unpaid minimum wage under the FLSA for all or some portion of their employment.

   *b)*  *FLSA Overtime Wages*

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)).  To support "a reasonable inference" that they worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, plaintiffs must sufficiently allege some uncompensated time in excess of the 40 hours

of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

All Plaintiffs allege that they worked more than 40 hours per week and were never paid overtime. (SAC ¶¶ 58, 60, 64, 67, 79, 81, 83, 87, 89, 91, 99, 102; Kegun Chen Aff. ¶¶ 3, 7; Xue Aff. ¶¶ 3-4, 9; Zou Aff. ¶¶ 3-5, 10; Guiying Chen Aff. ¶¶ 3-4, 8; Ying Aff. ¶¶ 3-4, 9; Huang Aff. ¶¶ 3-4, 9; Qi Aff. ¶¶ 3-4, 9; Lin Aff. ¶¶ 3-5, 10; Luo Aff. ¶¶ 3-4, 9; Bai Aff. ¶¶ 3-4, 9; Lu Aff. ¶¶ 3-4, 9; Gao Aff. ¶¶ 3-5, 10.)

These allegations establish Defendants' liability for failure to pay all Plaintiffs overtime pursuant to the FLSA.

2.   *NYLL Wage Claims*

a)   *NYLL Minimum and Promised Wages*

Under the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; NYLL § 652. From January 1, 2007 until December 30, 2013—the period covered by the Second Amended Complaint—the New York minimum wage was effectively $7.25. NYLL § 652(1), effective Dec. 6, 2004 to March 28, 2013 (establishing as of January 1, 2007, minimum wage of the greater of $7.15 or the federal minimum wage); NYLL § 652(1), effective March 29, 2013 to Apr. 3, 2016 (incorporating existing wage orders that established $7.25 minimum wage); 12 N.Y.C.R.R. § 146-1.2, effective Jan. 1, 2010 to Dec. 31, 2013. The New York and federal minimum wages were therefore the same during the period covered by the Second Amended Complaint.

Unlike the FLSA, the NYLL provides for recovery of promised wages, not just minimum wages, under Article 6, Section 191. *See, e.g., Calle v. Yoneles Enterprises, Inc.*, No. 16-CV-1008 (NGG)(RLM), 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017), *R&R adopted*, 2018 WL 401269

(E.D.N.Y. Jan. 12, 2018) ("Under the NYLL, however, a plaintiff can recover for unpaid 'straight' time at the agreed-upon rate, even if it exceeds the minimum wage."); *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC)(VMS), 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018) ("Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198."); *Chun Jie Yin*, 2008 WL 906736, at *4; *Shin Won Kang*, 2011 WL 1674554; *see also Goldberg v. Jacquet*, 667 F. App'x 313, 314 n.1 (2d Cir. 2016) ("Wholesale withholding of wages is covered by NYLL § 191."); *but see, e.g., Ansoralli v. CVS Pharmacy, Inc.*, No. 16-CV-1506 (CBA)(JRR), 2017 WL 8790986, at *5-8 (E.D.N.Y. Sept. 29, 2017) (concluding that Section 191 does not provide for recovery of unpaid wages above the minimum wage).

As with the FLSA, determination of whether Plaintiffs were paid the required wage under NYLL starts with a determination of Plaintiffs' regular hourly rate of pay. *Perez Campos*, 2018 WL 9945754, at *4. New York's Hospitality Industry Wage Order ("Hospitality Wage Order"), promulgated pursuant to the NYLL, requires that "when an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings ... by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b); *see Rowe*, 2019 WL 4395158, at *4. As restaurant workers, Plaintiffs were covered by the Hospitality Wage Order. *See* 12 N.Y.C.R.R. § 146-1.1 *and* 146-3.1; *see Rowe*, 2019 WL 4395158, at *4.

Based on the Hospitality Wage Order, the $60 Guiying Chen received (Guiying Chen Aff. ¶ 2-4) is applied to a 40-hour work week, for an effective hourly rate of $1.50. Likewise, Zou's weekly wage of $175 for the first 29 weeks of employment (Zou Aff. ¶¶ 3-6), applied to a 40-hour work week, results in an effective hourly rate of $4.38. Both these amounts are below the minimum wage; thus,

Guiying Chen and Zou have established Defendant's liability for failure to pay NYLL minimum wages during those periods.

For the periods when Defendants failed to pay any wages to Plaintiffs Kegun Chen, Xue, Zou, Guiying Chen, Ying, Huang, Qi, Lin, Luo, Bai, Lu, and Gao, Defendants violated the NYLL minimum wage provisions as well as the FLSA, as discussed above.

> *b)*      *NYLL Overtime Wages*

Like the FLSA, the NYLL requires that employees be paid one-and-a-half times their regular rates when they work over 40 hours in a week.   NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 146-1.4.   The NYLL applies the same standard as the FLSA for overtime claims.   *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021).   Because all Plaintiffs have established Defendants' liability for failure to pay overtime under the FLSA, they have also established their liability for overtime claims under the NYLL.

> *c)*      *NYLL Spread of Hours Wages*

Pursuant to the Hospitality Wage Order, restaurant employees are entitled to spread-of-hours pay.   "The spread of hours is the length of the interval between the beginning and end of an employee's workday."   12 N.Y.C.R.R. § 146-1.6.   "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."   12 N.Y.C.R.R. § 146-1.6(a).

Kegun Chen, Xue, Zou, Guiying Chen, Huang, Qi, Lin, Luo, Bai and Gao all worked more than ten hours per workday.   (SAC ¶¶ 58, 60, 64, 67, 72, 81, 83, 87, 89, 91; Kegun Chen Aff. ¶ 3; Xue Aff. ¶¶ 3-4; Zou Aff. ¶¶ 3-5; Guiying Chen Aff. ¶¶ 3-4; Huang Aff. ¶¶ 3-4; Qi Aff. ¶¶ 3-4; Lin Aff. ¶¶ 3-5; Luo Aff. ¶¶ 3-4; Bai Aff. ¶¶ 3-4; Gao Aff. ¶¶ 3-5.)   None of them were paid spread-of-hours pay. (SAC ¶ 102; Kegun Chen Aff. ¶¶ 8; Xue Aff. ¶¶ 10; Zou Aff. ¶¶ 11; Guiying Chen Aff. ¶¶ 9; Huang Aff. ¶¶ 10; Qi Aff. ¶¶ 10; Lin Aff. ¶¶ 11; Luo Aff. ¶¶ 10; Bai Aff. ¶¶ 10; Gao Aff. ¶¶ 11.)   These

allegations sufficiently establish that Defendants did not comply with New York's spread of hours requirement. *See Chen v. Y Café Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019) (finding that plaintiff's "alleg[ations] that he worked more than 10 hours every day, but [d]efendants have never paid him the extra spread-of-hours compensation" was sufficient to establish on a default judgment motion that defendants violated the NYLL (citation omitted)).

Ying and Lu worked fewer than ten hours per day and therefore were not entitled to spread-of-hours pay. (SAC ¶¶ 79, 99; Ying Aff. ¶ 3; Lu Aff. ¶ 3.)

**E.   Wage Notice and Wage Statement Claims**

Plaintiffs allege violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions. (SAC ¶¶ 56, 136, 138.)

*1.   Wage Notice Claims*

Section 195(1) requires that employers provide employees wage notices containing information about an employee's rate of pay, the name of the employer, and other information. *See* NYLL § 195(1)(a). Under the version of Section 195(1) in effect during the period covered by the Second Amended Complaint, employers were required to provide such notices at the time of hire and on the first of every February. 2010 Sess. L. News of N.Y. Ch. 564 (S. 8380); *see also* NYLL § 195(1)(a), *effective* Apr. 9, 2011-Dec. 28, 2014.

Plaintiffs were never provided wage notices. (SAC ¶¶ 56, 136; Kegun Chen Aff. ¶ 5; Xue Aff. ¶ 7; Zou Aff. ¶ 8; Guiying Chen Aff. ¶ 6; Ying Aff. ¶ 7; Huang Aff. ¶ 7; Qi Aff. ¶ 7; Lin Aff. ¶ 8; Luo Aff. ¶ 7; Bai Aff. ¶ 7; Lu Aff. ¶ 7; Gao Aff. ¶ 8.) These allegations establish Defendants' liability for violations of NYLL § 195(1).

*2.   Wage Statement Claims*

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment,

information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. This requirement was in effect during the period covered by the Second Amended Complaint.

Plaintiffs were never provided wage statements. (SAC ¶ 138; Kegun Chen Aff. ¶ 6; Xue Aff. ¶ 8; Zou Aff. ¶ 9; Guiying Chen Aff. ¶ 7; Ying Aff. ¶ 8; Huang Aff. ¶ 8; Qi Aff. ¶ 8; Lin Aff. ¶ 9; Luo Aff. ¶ 8; Bai Aff. ¶ 8; Lu Aff. ¶ 8; Gao Aff. ¶ 9.)

Kegun Chen and Ying were never paid but were still entitled to wage statements. The NYLL requires that workers such as Plaintiffs "shall be paid weekly" unless an exception applies, and no exception applies here. NYLL § 191(1). Simply because Defendants ignored the requirement to pay timely wages does not relieve them of liability for failure to provide wage statements. *See, e.g., Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG)(JMA), 2014 WL 4954629, at *5 (E.D.N.Y. Oct. 2, 2014) (awarding wage statement damages where plaintiff was never paid).

These allegations establish Defendants' liability for violations of NYLL § 195(3).

## V.    Damages

A default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The court may conduct a hearing to determine damages. Fed. R. Civ. P. 55(b)(2). On a motion for default judgment, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A.     Damages for Wage Violations

As discussed above, the federal and New York minimum wages were the same during the entire period of Plaintiffs' employment, but New York law allows for recovery of promised wages when they exceed minimum wages.  In addition, while New York law provides for prejudgment interest, it is available only for claims under New York state law.  (*See* Zhu Aff. ¶¶ 80-95 (seeking prejudgment interest on all unpaid wages)).  Thus, in light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), damages are calculated pursuant to the NYLL for all of Plaintiffs' wage violation claims.

1.     *Payments Less Than Minimum Wage*

Guiying Chen and Zou were paid less than minimum wage when they received any wages at all.

For the first six days she worked, Guiying Chen was paid $60, amounting to an effective hourly rate of $1.50 (based on a forty-hour work week).  The additional four days she worked, when she received no pay at all, are addressed in the next section.

For the first 29 weeks he worked, Zou was paid $175 per week, at an effective hourly rate of $4.38.  (SAC ¶ 65; Zou Aff. ¶¶ 3-5.)  However, Zou was promised $1,650 per month, so his promised rate was $9.52 per hour ($1,650 times 12 months divided by 52 weeks divided by 40 hours).  Because his promised rate was above the New York minimum wage, Zou is entitled to the higher promised amount under the NYLL. The unpaid wages for the eight weeks when he received no pay at all are addressed in the next section.

The following table shows Plaintiffs Guiying Chen and Zou's damages for the periods when they received some payment:

27

| Plaintiff | Promised Wage | Paid Hourly Rate | Entitled Hourly Rate | Hourly Underpayment (Entitled Rate - Paid Rate) | Paid Time | Hours at Regular Rate Per Week | Total Underpayments (Hourly underpayment x 40 hours per week x number of weeks) |
|---|---|---|---|---|---|---|---|
| Xinping Zou | $1,650 per month | $4.38 | $9.52 | $5.14 | 29 weeks[26] | 40 | $5,962.40 |
| Guiying Chen | None Specified | $1.50 | $7.25 | $5.75 | 1 week | 40 | $230.00 |

2.   _Unpaid Wages_

The following table summarizes damages for ten of the Plaintiffs for the periods of employment when they were not paid at all.  The amounts due for their unpaid wages are calculated using their regular rates (_i.e.,_ either the promised wage or minimum wage), and not counting overtime hours, which are addressed in the next section:

| Plaintiff | Promised Wage or Minimum Wage | Effective Hourly Rate[27] | Full Weeks of Unpaid Work | Additional Days of Unpaid Work | Regular Hours Worked on Additional Days | Underpayment (unpaid weeks x 40 x effective hourly rate + hours worked on additional days x effective hourly rate) |
|---|---|---|---|---|---|---|
| Kegun Chen | $2,500 per month | $14.42 | 8 | 2 | 24 | $4960.48 |
| Yiming Xue | $4,000 per month | $23.08 | 3 | 0 | 0 | $2,769.60 |
| Xinping Zou | $1,650 per month | $9.52 | 8 | 0 | 0 | $3,046.40 |
| Guiying Chen | $7.25 per hour | $7.25 | 0 | 4 | 40 | $290.00 |
| Taihwa Ma Ying | $7.25 per hour | $7.25 | 1 | 2 | 19 | $427.75 |
| Yayun Huang | $1,600 per month | $9.23 | 6 | 0 | 0 | $2,215.20 |
| Zhikun Qi | $2,800 per month | $16.15 | 4 | 2 | 22 | $2,939.30 |

---

[26] Damages for the eight weeks when Zou was not paid at all are addressed below.

[27] The effective hourly rate for Plaintiffs whose wages were based on a monthly rate are calculated by multiplying the monthly rate by twelve months, dividing by 52 weeks, and dividing the result by 40 hours.

| | | | | | | |
|---|---|---|---|---|---|---|
| Xiujuan Lin | $3,000 per month | $17.31 | 1 month and 1 week | 0 | 0 | $3,692.40[28] |
| Fengqin Luo | $7.25 per hour | $7.25 | 3 | 5 | 40 | $1,160 |
| Xionghu Bai | $2000 per month | $11.54 | 1 | 4 | 40 | $923.20 |

In addition, Lu states that he was promised a daily rate of $160, but received no pay for 41 days of work.  (Lu Aff. ¶¶ 3-4.)  The undersigned respectfully recommends that he be awarded his requested amount of $6,560.00 in unpaid wages for those days.  (Lu Aff. ¶ 5; see Lu Timecard.)

Gao alleges that he did not receive $500 of his promised wages.  (Gao Aff. ¶ 6.)  Although he does not specify which days or weeks of unpaid work is reflected in this amount, the undersigned accepts his allegation as true and respectfully recommends that he be awarded that amount as damages for unpaid promised wages.

### 3.  *Overtime Damages*

Under the NYLL, Plaintiffs were entitled to overtime pay for all hours worked over 40 per week at 1.5 times either the minimum wage rate or their promised rate, whichever was higher.  *See Yoneles Enterprises, Inc.*, 2017 WL 6942652, at *14.  Because Plaintiffs were never paid overtime, each Plaintiff is entitled to 1.5 times their regular rate for all hours over forty per week during their entire employment with Defendants, as set forth in the following table:

| Plaintiff | Full Weeks Worked | Hourly Rate | Overtime Rate (Hourly Rate x 1.5) | Weekly Hours Over 40 | Overtime Hours Worked in Final Partial Week | Total Overtime Hours Worked (Weekly Hours Over 40 x Full Weeks Worked + Overtime Hours in Final Partial Week) | Overtime Pay Owed (Overtime Rate x Total Overtime Hours) |
|---|---|---|---|---|---|---|---|
| Kegun Chen | 8 | $14.42 | $21.63 | 44 | 0 | 352 | $7,613.76 |
| Yiming Xue | 29 | $23.08 | $34.62 | 26 | 0 | 754 | $26,103.48 |
| Xinping Zou | 37 | $9.52 | $14.28 | 26 | 0 | 962 | $13,737.36 |
| Guiying Chen | 1 | $7.25 | $10.88 | 26 | 4 | 30 | $326.25 |

---

[28] Lin alleges that he was not paid for his last one month and one week of employment.  (SAC ¶ 87; Lin Aff. ¶ 6.)  Damages for the additional week are calculated using the regular rate of pay multiplied by forty hours.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Taihwa Ma Ying | 1 | $7.25 | $10.88 | 17 | 0 | 17 | $184.88 |
| Yayun Huang | 29 | $9.23 | $13.85 | 26 | 4 | 758 | $10,494.51 |
| Zhikun Qi | 67 | $16.15 | $24.23 | 26 | 4 | 1746 | $42,296.85 |
| Xiujuan Lin (First Period) | 2 | $15.00 | $22.50 | 26 | 26 | 78 | $1,755.00 |
| Xiujuan Lin (Second Period)[29] | 64 | $17.31 | $25.97 | 26 | 4 | 1668 | $43,309.62 |
| Fengqin Luo | 7 | $7.25 | $10.88 | 23 | 0 | 161 | $1,750.88 |
| Xionghu Bai | 4 | $11.54 | $17.31 | 26 | 0 | 104 | $1,800.24 |
| Wenrong Lu | 56 | $24.00 | $36.00 | 14 | 0 | 784 | $28,224.00 |
| Wenliang Gao (First Period) | 4 | $13.27 | $19.91 | 26 | 4 | 108 | $2,149.74 |
| Wenliang Gao (Second Period)[30] | 8 | $14.42 | $21.63 | 26 | 0 | 208 | $4,499.04 |

4.   *Spread of Hours Damages*

As restaurant workers, Plaintiffs were entitled to an extra hour of pay at the minimum wage
rate for each day they worked more than ten hours.  Ying and Lu worked fewer than ten hours per
day and therefore were not entitled to spread-of-hours pay.  (SAC ¶¶ 79, 99; Ying Aff. ¶ 3; Lu Aff. ¶
3.)  The other Plaintiffs were all entitled to spread of hours pay.  The following table shows the
Plaintiffs' spread of hours damages:

| Plaintiff | Full Weeks Worked | Days Worked Final Week | Days per Week | Minimum Wage Rate | Spread of Hours Pay (Total Days Worked x Minimum Wage Rate) |
|---|---|---|---|---|---|
| Kegun Chen | 8 | 2 | 7 | $7.25 | $420.5 |
| Yiming Xue | 29 | 1 | 6 | $7.25 | $1,268.75 |
| Xinping Zou | 37 | 0 | 6 | $7.25 | $1,609.50 |
| Guiying Chen | 1 | 4 | 6 | $7.25 | $72.50 |
| Yayun Huang | 29 | 4 | 6 | $7.25 | $1,290.50 |
| Zhikun Qi | 67 | 4 | 6 | $7.25 | $2,943.50 |
| Xiujuan Lin | 67 | 4 | 6 | $7.25 | $2,943.50 |
| Fengqin Luo | 7 | 1 | 6 | $7.25 | $311.75 |
| Xionghu Bai | 4 | 3 | 6 | $7.25 | $195.75 |
| Wenliang Gao | 12 | 4 | 6 | $7.25 | $551.00 |

---

[29] Lin received a raise in April 2012, from $2,600 per month to $3,000 per month, resulting in a higher hourly
rate.

[30] Gao received a raise on April 20, 2013, from $2,300 per month to $2,500 per month, resulting in a higher
hourly rate.

**B.     Wage Notice and Wage Statement Damages**

Plaintiffs seek damages for Defendants' violations of NYLL §§ 195(1) and 195(3).

*1.     Wage Notice Damages*

During the period of Plaintiff's employment, violations of § 198(1-b) incurred damages of $50

per workweek up to a statutory maximum of $2,500.[31]   Additionally, under the plain language of the

statute, Plaintiffs are only entitled to damages for each week they were actually employed by

Defendants. *See, e.g., Arnoldo Lopez Vasquez v. Lahori Kebab & Grill Corp.*, No. 18-CV-2117 (JS)(SIL),

2019 WL 4396724, at *8 (E.D.N.Y. Aug. 13, 2019), *R&R adopted*, 2019 WL 4620922 (E.D.N.Y. Sept.

5, 2019) (allowing recovery of $3,850 under revised Section 198(1-b) where plaintiff worked for 11

weeks or 77 days).

The following table sets forth each Plaintiff's wage notice damages, including both full and

partial weeks:

| Plaintiff | Weeks Worked | Damages ($50 per workweek, up to $2,500) |
|---|---|---|
| Kegun Chen | 9 | $450.00 |
| Yiming Xue | 30 | $1,500.00 |
| Xinping Zou | 37 | $1,850.00 |
| Guiying Chen | 2 | $100.00 |
| Taihwa Ma Ying | 2 | $100.00 |
| Yayun Huang | 30 | $1,500.00 |
| Zhikun Qi | 68 | $2,500.00 |
| Xiujuan Lin | 68 | $2,500.00 |
| Fengqin Luo | 8 | $400.00 |
| Xionghu Bai | 5 | $250.00 |
| Wenrong Lu | 57 | $2,500.00 |
| Wenliang Gao | 13 | $650.00 |

---

[31] Prior to February 27, 2015, NYLL § 198(1-b) provided for damages of $50 per workweek up to a statutory maximum of $2,500. *See* NYLL § 198(1-b) (effective Apr. 9, 2011).  The increase to the statutory maximum is not retroactive. *See* NYLL § 198(1-b) (effective Feb. 27, 2015); *see also Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *21 (E.D.N.Y. Sept. 22, 2017), *R&R adopted*, Dkt. Order dated Oct. 18, 2017 (concluding that the increase in damages under Section 198(1-b) is not retroactive and applying lower statutory threshold to employee hired before February 27, 2015).

2.    *Wage Statement Damages*

During the period of Plaintiffs' employment, violations of NYLL § 195(3) incurred damages of $100 per workweek up to a statutory maximum of $2,500. *See* NYLL § 198(1-d) (effective Apr. 9, 2011).[32] The following table sets forth each Plaintiff's wage statement damages:

| Plaintiff | Weeks Worked | Damages ($100 per workweek, up to $2,500) |
|---|---|---|
| Kegun Chen | 9 | $900.00 |
| Yiming Xue | 30 | $2,500.00 |
| Xinping Zou | 37 | $2,500.00 |
| Guiying Chen | 2 | $200.00 |
| Taihwa Ma Ying | 2 | $200.00 |
| Yayun Huang | 30 | $2,500.00 |
| Zhikun Qi | 68 | $2,500.00 |
| Xiujuan Lin | 68 | $2,500 |
| Fengqin Luo | 8 | $800.00 |
| Xionghu Bai | 5 | $500.00 |
| Wenrong Lu | 57 | $2,500.00 |
| Wenliang Gao | 13 | $1,300.00 |

## C.    Liquidated Damages

Under the FLSA and the NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime; under the NYLL, Plaintiffs may recover liquidated damages for unpaid minimum wage (or promised wages), overtime, and spread of hours compensation. 29 U.S.C. § 216(b); NYLL § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages). Because Defendants did not respond to the Second Amended Complaint or the Motion, there is no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State*

---

[32] As of February 27, 2015, Section 195(3) provides for damages of $250 per workday, for a maximum of $5,000. NYLL § 198(1-d).

*Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Plaintiffs may therefore be awarded liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount. *See Charvac*, 2015 WL 5475531, at *4.

Accordingly, the undersigned respectfully recommends Plaintiffs be awarded liquidated damages under the NYLL as follows:

| Plaintiff | Damages for Payments Less Than Minimum Wage | Damages for Unpaid Wages | Overtime Damages | Spread of Hours Damages | Total Liquidated Damages |
|---|---|---|---|---|---|
| Kegun Chen | $0.00 | $4,960.48 | $7,613.76 | $420.50 | $12,994.74 |
| Yiming Xue | $0.00 | $2,769.60 | $26,103.48 | $1,268.75 | $30,141.83 |
| Xinping Zou | $5,962.40 | $3,046.40 | $13,737.36 | $1,609.50 | $24,355.66 |
| Guiying Chen | $230.00 | $290.00 | $326.25 | $72.50 | $918.75 |
| Taihwa Ma Ying | $0.00 | $427.75 | $184.88 | $0.00 | $612.63 |
| Yayun Huang | $0.00 | $2,215.20 | $10,494.51 | $1,290.50 | $14,000.21 |
| Zhikun Qi | $0.00 | $2,939.30 | $42,296.85 | $2,943.50 | $48,179.65 |
| Xiujuan Lin | $0.00 | $3,692.40 | $45,064.62 | $2,943.50 | $51,700.52 |
| Fengqin Luo | $0.00 | $1,160.00 | $1,750.88 | $311.75 | $3,222.63 |
| Xionghu Bai | $0.00 | $923.20 | $1,800.24 | $195.75 | $2,919.19 |
| Wenrong Lu | $0.00 | $6,560.00 | $28,224.00 | $0.00 | $34,784.00 |
| Wenliang Gao | $0.00 | $500.00 | $6,648.78 | $551.00 | $7,699.78 |

### D.   Prejudgment Interest

Plaintiffs seek prejudgment interest under the NYLL. (SAC at 22; "Mem. of Law," Dkt. 175, at 4-5, 12-14.) Prejudgment interest is available for underpayments under the NYLL, which in this case includes minimum wages, promised wages, overtime wages, and spread of hours pay. *See* NYLL § 198(1-a). Prejudgment interest is not available for wage statement or wage notice violations, or for liquidated damages. *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). A plaintiff may, however, seek prejudgment interest on any underpayment in addition to liquidated damages. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest

and liquidated damages under the Labor Law are not functional equivalents.")

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49.) Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g.*, *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

The undersigned uses the midpoint of each Plaintiffs' NYLL claims, which is the midpoint of their employment.

The daily rate of interest for each Plaintiff, from the midpoint of their claims, is set forth in the following table:

| Plaintiff | Starting Date | End Date | Midpoint | Total Damages Eligible for Prejudgment Interest (Unpaid Wages) | Daily Rate |
|---|---|---|---|---|---|
| Kegun Chen | May 1, 2013 | June 27, 2013 | May 29, 2013 | $12,994.74 | $3.20 |
| Yiming Xue | Dec. 6, 2012 | June 27, 2013 | Mar. 17, 2013 | $30,141.83 | $7.43 |
| Xinping Zou | Oct. 12, 2012 | June 27, 2013 | Feb. 18, 2013 | $24,355.66 | $6.01 |
| Guiying Chen | June 17, 2013 | June 27, 2013 | June 22, 2013 | $918.75 | $0.23 |
| Taihwa Ma Ying | June 19, 2013 | June 27, 2013 | June 23, 2013 | $612.63 | $0.15 |
| Yayun Huang | Dec. 3, 2012 | June 27, 2013 | Mar. 16, 2013 | $14,000.21 | $3.45 |
| Zhikun Qi | Mar. 12, 2012 | June 27, 2013 | Nov. 3, 2012 | $48,179.65 | $11.88 |
| Xiujuan Lin | Mar. 12, 2012 | June 27, 2013 | Nov. 3, 2012 | $51,700.52 | $12.75 |
| Fengqin Luo | May 9, 2013 | June 27, 2013 | June 2, 2013 | $3,222.63 | $0.79 |
| Xionghu Bai | May 28, 2013 | June 27, 2013 | June 12, 2013 | $2,919.19 | $0.72 |
| Wenrong Lu | June 1, 2012 | June 29, 2013 | Dec. 14, 2012 | $34,784.00 | $8.58 |
| Wenliang Gao | Mar. 20, 2013 | June 15, 2013 | May 2, 2013 | $7,699.78 | $1.90 |

The undersigned respectfully recommends that Plaintiffs be awarded prejudgment interest at the daily rate from the midpoint of their respective claims until the entry of judgment.

### E.      Post-Judgment Interest

Plaintiffs also seek post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin,* 93 F. Supp. 3d at 53. (SAC at 22; Mem. of Law at 1.) Accordingly, the undersigned respectfully recommends that Plaintiffs be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### F.      Fifteen Percent Increase Penalty if Damages not Paid within Ninety Days

Plaintiffs do not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4). However, that provision mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted,* 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This award is therefore mandatory, regardless of whether Plaintiffs request it or not.

The increase applies only to damages awarded under state law. *See Rodriguez,* 2018 WL 7252949, at *12 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.,* No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted,* 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiffs' damages

under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment.

**VI.**   **Attorneys' Fees and Costs**

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); NYLL § 663

Plaintiffs request $50,517.50 in attorneys' fees and $3,000 in costs.  (Mem. of Law at 18.)

**A.**   **Attorneys' Fees**

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted).  "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly."  *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug.

11, 2016) (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation is grounds for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

    *1.    Hourly Rate*

Plaintiffs seek attorneys' fees for the work of Jian Hang, Shan Zhu, Jiajing Fan, Rui Ma, William M. Brown, Quinyu Fan, Keli Liu, Ken Maeng, Anqi Yu, Zhujing Wu, Ge Yan, and Leticia Ochoa.

Hang has been admitted in the Eastern District since 2005 and handles primarily employment-related matters. (Zhu Aff. ¶ 102.) Hang has represented plaintiffs in over 50 lawsuits in federal court, including five collective actions of over 25 plaintiffs each. (*Id.* ¶ 103.) Hang's requested hourly rate is $350. (*Id.* ¶ 105.)

Zhu has been admitted to the Eastern District since 2019, and previously worked at an employment law firm in New Jersey since 2018. (*Id.* ¶ 106.) Plaintiffs request $300 per hour for Zhu. (*Id.*)

Jiajing Fan received an LLM in 2016 and has practiced in labor and employment law since September 2018. (*Id.* ¶ 107.) She has handled more than 30 cases in the Eastern District. (*Id.*) Plaintiffs request a rate of $225 per hour for work Fan performed prior to January 2019, and $300 per hour for work performed since. (*Id.*)

No credentials or backgrounds were submitted for Rui Ma, William M. Brown, Quinyu Fan, Keli Liu, Ken Maeng, Zhujing Wu, Anqi Yu, Ge Yan, or Leticia Ochoa, who billed time on this matter at various hourly rates. (*See* Ex. 7 to the Zhu Aff., "Time Records," Dkt. 17-8 at 3-7.)

Some courts in this district have held that the appropriate range for a senior attorney in a labor

law case is $300 to $400 per hour, while others have found that $450 is the proper upper limit of the range. *See Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020). The undersigned finds that $350 per hour is a reasonable rate for an attorney with experience similar to Hang's in an FLSA default judgment matter. *See Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020).

However, the undersigned finds that the rates for Zhu and Jiajing Fan should be reduced to $250 per hour, given their limited experience. *See Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667, 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (finding that "FLSA litigators who have more than three years of experience have been awarded rates in excess of $225 per hour." (citation omitted)).

Because Plaintiffs have provided no credentials for the remaining billing individuals, the undersigned finds that a $100 rate is appropriate for Ma, Brown, Quinyu Fan, Liu, and Maeng, who, based on their time entries and billing rates, appear to be attorneys. *See Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (reducing attorney rate to $100 where no credentials submitted); *Lu v. Nisen Sushi of Commack, LLC*, No. 18CV7177RJDST, 2020 WL 9814084, at *12 (E.D.N.Y. Mar. 14, 2020) (same).

For Wu, Yu, Yan and Ochoa, who appear to be paralegals based on their time entries and billing rates, the undersigned finds that $70 is an appropriate rate in light of the lack of provided credentials. *See Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals in fee-shifting cases").

2.     *Reasonableness of Time Billed*

Plaintiffs' fee application contains several vague time entries that the undersigned cannot determine were appropriately billed to this matter. (*See, e.g.*, Time Records at 7 (Qinyu Fan time entry

for 9/15/2020 ("check previous case status")).  Other entries relate to a settlement agreement that did not involve the Defendants.  (*See, e.g., id.* at 4-5 (numerous entries relating to settlement agreement.) Others are administrative items that are not appropriate on a fee motion.  (*See, e.g., id.* at 7 (time entry for 9/16/2020 by Qinyu Fan for "file management").)

Other entries are excessive.  For example, on July 1, 2016, William Brown billed 2.3 hours for "Prepare for pretrail [sic] conference," and on July 5, 2016, William Brown billed three hours for "Attend pretrail [sic] conference."  (Time Records at 2.)  However, review of the docket entry for the July 5, 2016 conference shows that it lasted only 15 minutes.  (Minute Entry dated July 5, 2016.)

Similarly, on October 30, 2018, Rui Ma billed 2 hours for "Attend telephone conference." (Time Records at 2.)  The Minute Order for the telephone conference that day states that the call lasted twelve minutes, starting at 3:34 p.m. and ending at 3:46 p.m.  (Minute Order dated Oct. 30, 2018.)

The undersigned finds that the time related to settlement should be excluded from Plaintiffs' counsel's fees.  Because the remaining entries are often vague, administrative, or excessive, the undersigned finds that a 15% reduction on the remaining hours is warranted, rather than further line-by-line review of the entries.  The following table summarizes the requested fees, the recommended reductions, and the total fee amount:

| Time Keeper | Total Billed Requested | Hours Billed to Settlement with Non-Defaulting Defendants | Hours Billed Excluding Settlement | Reduced Hours (15% reduction) | Requested Rate | Recommended Rate | Total |
|---|---|---|---|---|---|---|---|
| Jian Hang | 63.3 | 0 | 63.3 | 53.805 | $350 | $350 | $18,831.75 |
| Shan Zhu | 23.3 | 0 | 23.3 | 19.805 | $250 | $250 | $4,951.25 |
| Jiajing Fan | 25.1 | 7.3 | 17.8 | 15.13 | $225/$300 | $250 | $3,782.50 |
| Rui Ma | 15 | 8.6 | 6.4 | 5.44 | $250/$300 | $100 | $544.00 |
| William M. Brown | 10 | 0 | 10 | 8.5 | $250 | $100 | $850.00 |
| Qinyu Fan | 8.7 | 4 | 4.7 | 3.995 | $300 | $100 | $399.50 |
| Keli Liu | 1.3 | 1.2 | 0.1 | 0.085 | $300 | $100 | $8.50 |
| Ken Maeng | 2 | 2 | 0 | 0 | $300 | $100 | $0.00 |
| Zhujing Wu | 5.5 | 0 | 5.5 | 4.675 | $250 | $70 | $327.25 |

| Anqi Yu | 0.1 | 0 | 0.1 | 0.085 | $200 | $70 | $5.95 |
| Ge Yan | 3.6 | 1.5 | 2.1 | 1.785 | $150 | $70 | $124.95 |
| Leticia Ochoa | 0.1 | 0 | 0.1 | 0.085 | $150 | $70 | $5.95 |
| | | | | | | Total: | $29,831.60 |

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $29,831.60 in attorneys' fees.

**B.    Costs**

Plaintiffs also seek $3,000 in costs, including the filing fee, deposition fees, and service fees. (Time Records at 3.)  The undersigned takes judicial notice of the filing fee.  *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it).

In addition to the filing fee, Plaintiffs' counsel summarizes their costs as: $2,021.00 for "Deposition Interpretation Fees," $350.00 for "Deposition Stenography Fee," $40.00 for "Deposition Witness Compensation," and $189.00 for service of process.  (Time Records at 3.)  Those costs total $2,600.00.  However, the submitted invoices, receipts, and checks show $2,021.50 in deposition and translation costs and $55.00 for service of a deposition subpoena.  (Time Records at 9-19.)  There is also a check for $75 which states on the memo line that it is for "server fee Oceanica."  (Time Records at 18.)  Plaintiff failed to provide documentation to support the remaining $448.50 in requested costs.

In light of these invoices and checks, the undersigned respectfully recommends that Plaintiff be awarded costs of $2,551.50.

**VII.   Joint and Several Liability**

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner,

partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to ... impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).   The undersigned therefore respectfully recommends that Defendants be held jointly and severally liable for their violations of the FLSA and NYLL.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted in part and denied in part.   Specifically, the undersigned respectfully recommends that Plaintiffs be awarded damages as set forth in the following summary table:

| Plaintiff | Damages for Payments Less Than Minimum Wage | Damages for Unpaid Wages | Overtime Damages | Spread of Hours Damages | Liquidated Damages | Wage Statement Damages | Wage Notice Damages | Total Damages |
|---|---|---|---|---|---|---|---|---|
| Kegun Chen | $0.00 | $4,960.48 | $7,613.76 | $420.50 | $12,994.74 | $450.00 | $900.00 | $27,339.48 |
| Yiming Xue | $0.00 | $2,769.60 | $26,103.48 | $1,268.75 | $30,141.83 | $1,500.00 | $2,500.00 | $64,283.66 |
| Xinping Zou | $5,962.40 | $3,046.40 | $13,737.36 | $1,609.50 | $24,355.66 | $1,850.00 | $2,500.00 | $53,061.32 |
| Guiying Chen | $230.00 | $290.00 | $326.25 | $72.50 | $918.75 | $100.00 | $200.00 | $2,137.50 |
| Taihwa Ma Ying | $0.00 | $427.75 | $184.88 | $0.00 | $612.63 | $100.00 | $200.00 | $1,525.26 |
| Yayun Huang | $0.00 | $2,215.20 | $10,494.51 | $1,2909.50 | $14,000.21 | $1,500.00 | $2,500.00 | $32,000.42 |
| Zhikun Qi | $0.00 | $2,939.30 | $42,296.85 | $2,943.50 | $48,179.65 | $2,500.00 | $2,500.00 | $101,359.30 |
| Xiujuan Lin | $0.00 | $3,692.40 | $45,064.62 | $2,943.50 | $51,700.52 | $2,500.00 | $2,500.00 | $108.401.00 |
| Fengqin Luo | $0.00 | $1,160.00 | $1,750.88 | $311.75 | $3,222.63 | $400.00 | $800.00 | $7,645.26 |
| Xionghu Bai | $0.00 | $923.20 | $1,800.24 | $195.75 | $2,919.19 | $250.00 | $500.00 | $6,588.38 |
| Wenrong Lu | $0.00 | $6,560.00 | $28,224.00 | $0.00 | $34,784.00 | $2,500.00 | $2,500.00 | $74,568.00 |
| Wenliang Gao | $0.00 | $500.00 | $6,648.78 | $551.00 | $7,699.78 | $650.00 | $1,300.00 | $17,349.56 |

The undersigned further respectfully recommends that Plaintiffs be granted prejudgment interest at the following rates, from the following dates:

| Plaintiff | Calculation Start Date | Daily Rate |
|---|---|---|
| Kegun Chen | May 29, 2013 | $3.20 |
| Yiming Xue | Mar. 17, 2013 | $7.43 |
| Xinping Zou | Feb. 18, 2013 | $6.01 |
| Guiying Chen | June 22, 2013 | $0.23 |
| Taihwa Ma Ying | June 23, 2013 | $0.15 |
| Yayun Huang | Mar. 16, 2013 | $3.45 |
| Zhikun Qi | Nov. 3, 2012 | $11.88 |
| Xiujuan Lin | Nov. 3, 2012 | $12.75 |
| Fengqin Luo | June 2, 2013 | $0.79 |
| Xionghu Bai | June 12, 2013 | $0.72 |
| Wenrong Lu | Dec. 14, 2012 | $8.58 |
| Wenliang Gao | May 2, 2013 | $1.90 |

The undersigned further respectfully recommends that Plaintiffs be granted post-judgment interest and the fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

The undersigned further respectfully recommends that Plaintiffs be awarded $29,831.60 in attorneys' fees and $2,551.50 in costs.

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants forthwith and file proof of service on the docket by **March 3, 2023**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
          February 28, 2023

42